**WARD ET AL., APPELLEES, *v*. SUMMA HEALTH SYSTEM ET AL.;**

**DEBSKI, APPELLANT.**

**[Cite as *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275.]**

*R.C. 2317.02(B) — The physician-patient privilege does not preclude discovery of medical information from a patient.*

(No. 2009-1998 — Submitted September 28, 2010 — Decided December 27, 2010.)

APPEAL from the Court of Appeals for Summit County, No. 24567, 184 Ohio App.3d 254, 2009-Ohio-4859.

_____

**LANZINGER, J.**

**{¶ 1}** This case involves a patient who may have contracted a blood-borne disease from a health-care provider during a hospital stay. The issue for our review concerns the patient's ability to obtain discovery to determine the source of his exposure.

### I. Case Background

**{¶ 2}** In May 2006, appellee Donald Ward underwent a procedure to replace his heart valve at Summa Health System ("Summa"). Five months later, Summa notified Ward that he may have been exposed to hepatitis B during his time at Summa. After he tested positive for the virus, Ward and his wife filed a complaint against Summa and John Does 1 through 6, alleging various claims, including medical malpractice. The Wards also requested an extension of time to file the affidavit of merit required by Civ.R. 10(D)(2), arguing that discovery was needed because Summa had refused to identify the source of Donald Ward's exposure to the virus. The trial court granted the motion.

{¶ 3} In December 2007, the Wards filed a notice of deposition for Donald Ward's surgeon, appellant Robert F. Debski, M.D., who was not a named party to the action. In response to previous discussions regarding the deposition, Debski's attorney sent a letter to the Wards' counsel stating that the doctor would not discuss his own personal medical information but would testify about the surgery he had performed. The Wards refused to limit the scope of the deposition, and Debski filed a motion for a protective order, arguing that the physician-patient privilege protected his right to privacy with regard to his own medical information. The Wards opposed the motion and detailed why they believed that Debski could be the source of exposure. They contended that the physician-patient privilege did not apply, and they explained that they wished to ask Debski (1) whether he has ever had hepatitis B and, if so, (2) when he contracted the disease and (3) how and when he became aware that he had the disease. The trial court granted the protective order, finding that the doctor had standing to assert the physician-patient privilege in testifying as to his own medical information and that there had been no waiver of the privilege.[1]

{¶ 4} In the meantime, Summa filed a motion to dismiss because the Wards had not yet filed an affidavit of merit as required by Civ.R. 10(D)(2). The trial court granted the Wards an extension of time to file their affidavit and granted a further extension after their attempt to appeal the protective order was dismissed for lack of a final appealable order.

{¶ 5} On December 2, 2008, Summa filed a second motion to dismiss, arguing that dismissal was appropriate because the Wards had failed to comply with the trial court's order to submit an affidavit of merit. The Wards responded that their effort to obtain an affidavit had been hampered by the trial court's discovery rulings. They contended that their inability to identify the source of the

---

1. As part of the order, the trial court denied the Wards' request to compel the production of unusual-occurrence reports from Summa.

hepatitis B exposure prevented prospective expert witnesses from determining whether the standard of care had been met. The trial court dismissed the case without prejudice based on the Wards' failure to state a claim pursuant to Civ.R. 10(D)(2)(d) and their failure to comply with the court's order under Civ.R. 41(B)(1).

{¶ 6} The court of appeals reversed.[2] The appellate court examined R.C. 2317.02(B)(1) and determined that "[w]hile Dr. Debski is a physician, the testimony being sought concerns his role as a patient: the Wards do not wish to ask Dr. Debski about his patients or their records; the Wards want to ask Dr. Debski about himself. Nothing in the plain language of the statute prohibits this inquiry. The statute does not prevent patients from testifying. Also, while the Wards seek what clearly could be classified as a 'communication' under the statute, they do not seek it from the protected person, the physician; they seek it from an unprotected source, the patient." *Ward v. Summa Health Sys.*, 184 Ohio App.3d 254, 2009-Ohio-4859, 920 N.E.2d 421, ¶ 25.

{¶ 7} We accepted jurisdiction of Robert Debski's discretionary appeal.[3]

## II. Legal Analysis

{¶ 8} This case concerns the ability of the Wards to discover information that could lead to the source of Donald Ward's hepatitis B exposure.

### A. Discovery in General

---

2. As an initial matter, the appellate court addressed whether there was a final, appealable order. It noted that generally a dismissal without prejudice is not a final, appealable order, but if the order affects a substantial right and in effect determines the action and prevents a judgment, it is a final order. R.C. 2505.02(B)(1); see also *Natl. City Commercial Capital Corp. v. AAAA At Your Serv., Inc.*, 114 Ohio St.3d 82, 2007-Ohio-2942, 868 N.E.2d 663. The appellate court found that because the Wards could not produce an affidavit of merit without the denied discovery requests, the dismissal in effect prevented a judgment in their favor and therefore was a final, appealable order. *Ward v. Summa Health Sys.*, 184 Ohio App.3d 254, 2009-Ohio-4859, 920 N.E.2d 421, ¶ 8. No one challenged this determination, and therefore we will not address this aspect of the court of appeals' ruling.

3. The appellate court also reversed the trial court's order denying the Wards' motion to compel that they had filed against Summa. We did not accept Summa's discretionary appeal.

**{¶ 9}** Parties have a right to liberal discovery of information under the Rules of Civil Procedure. See *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 661-662, 635 N.E.2d 331. Discovery may be obtained through "deposition upon oral examination or written questions; written interrogatories; production of documents, electronically stored information, or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission." Civ.R. 26(A). Even though Dr. Debski is not a party, he can be compelled to give a deposition, as any witness in a civil case may be. See Civ.R. 30 and 31.

**{¶ 10}** The scope of the information that a party may discover is governed by Civ.R. 26(B)(1), which provides:

**{¶ 11}** "Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." (Emphasis added.)

**{¶ 12}** In this case, the Wards subpoenaed Dr. Debski for deposition and at some point indicated that they intended to ask him about his personal medical information. Debski does not dispute the relevancy of the information sought to the Wards' lawsuit. He nonetheless argues that the Wards are not entitled to discover the information, because it is protected by the physician-patient privilege.

**{¶ 13}** Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard. *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 151-152, 569 N.E.2d 875. However, if the discovery issue involves an alleged privilege, as in this case, it is a question of law that must be reviewed de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13.

**{¶ 14}** We will now examine the scope of the physician-patient privilege.

*B. Physician-Patient Privilege — R.C. 2317.02(B)*

**{¶ 15}** The physician-patient privilege did not exist at common law. *State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 140, 541 N.E.2d 602; *Weis v. Weis* (1947), 147 Ohio St. 416, 428-429, 34 O.O. 350, 72 N.E.2d 245. Therefore, being in derogation of the common law, any statutory privilege must be strictly construed against the party seeking to assert it and may be applied only to those circumstances specifically named in the statute. Id.

**{¶ 16}** The General Assembly established the physician-patient privilege in R.C. 2317.02. It states as follows:

**{¶ 17}** "The following persons shall not testify in certain respects:

**{¶ 18}** "* * *

**{¶ 19}** "(B)(1) A physician or a dentist concerning a communication made to the physician or dentist by a patient in that relation or the physician's or dentist's advice to a patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject.

**{¶ 20}** "* * *

**{¶ 21}** "(5) (a) As used in divisions (B)(1) to (4) of this section, 'communication' means acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a

physician or dentist to diagnose, treat, prescribe, or act for a patient. A 'communication' may include, but is not limited to, any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis."

**{¶ 22}** The physician-patient privilege, however, is not absolute. R.C. 2917.02(B) contains a number of exceptions.[4] For instance, the privilege does not

---

4. {¶ a} R.C. 2317.02 provides:

{¶ b} "The testimonial privilege established under this division does not apply, and a physician or dentist may testify or may be compelled to testify, in any of the following circumstances:

{¶ c} "(B)(1)(a) In any civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action, or in connection with a claim under Chapter 4123. of the Revised Code, under any of the following circumstances:

{¶ d} "(i) If the patient or the guardian or other legal representative of the patient gives express consent;

{¶ e} If the patient is deceased, the spouse of the patient or the executor or administrator of the patient's estate gives express consent;

{¶ f} "(iii) If a medical claim, dental claim, chiropractic claim, or optometric claim, as defined in section 2305.113 of the Revised Code, an action for wrongful death, any other type of civil action, or a claim under Chapter 4123. of the Revised Code is filed by the patient, the personal representative of the estate of the patient if deceased, or the patient's guardian or other legal representative.

{¶ g} "(b) In any civil action concerning court-ordered treatment or services received by a patient, if the court-ordered treatment or services were ordered as part of a case plan journalized under section 2151.412 of the Revised Code or the court-ordered treatment or services are necessary or relevant to dependency, neglect, or abuse or temporary or permanent custody proceedings under Chapter 2151. of the Revised Code.

{¶ h} "(c) In any criminal action concerning any test or the results of any test that determines the presence or concentration of alcohol, a drug of abuse, a combination of them, a controlled substance, or a metabolite of a controlled substance in the patient's whole blood, blood serum or plasma, breath, urine, or other bodily substance at any time relevant to the criminal offense in question.

{¶ i} "(d) In any criminal action against a physician or dentist. In such an action, the testimonial privilege established under this division does not prohibit the admission into evidence, in accordance with the Rules of Evidence, of a patient's medical or dental records or other communications between a patient and the physician or dentist that are related to the action and obtained by subpoena, search warrant, or other lawful means. A court that permits or compels a physician or dentist to testify in such an action or permits the introduction into evidence of patient records or other communications in such an action shall require that appropriate measures be taken to ensure that the confidentiality of any patient named or otherwise identified in the records is maintained. Measures to ensure confidentiality that may be taken by the court include sealing its records or deleting specific information from its records.

apply when the patient gives express consent to the release of medical information or when the patient places his medical condition in issue by filing a medical claim or wrongful-death action.

{¶ 23} We have previously discussed the purpose behind the physician-patient privilege:

{¶ 24} "A review of the physician-patient privilege found in R.C. 2317.02(B) indicates that the statute has a specific purpose. It is designed to create an atmosphere of confidentiality, which theoretically will encourage the

{¶ j} "(e) (i) If the communication was between a patient who has since died and the deceased patient's physician or dentist, the communication is relevant to a dispute between parties who claim through that deceased patient, regardless of whether the claims are by testate or intestate succession or by inter vivos transaction, and the dispute addresses the competency of the deceased patient when the deceased patient executed a document that is the basis of the dispute or whether the deceased patient was a victim of fraud, undue influence, or duress when the deceased patient executed a document that is the basis of the dispute.

{¶ k} "(ii) If neither the spouse of a patient nor the executor or administrator of that patient's estate gives consent under division (B)(1)(a)(ii) of this section, testimony or the disclosure of the patient's medical records by a physician, dentist, or other health care provider under division (B)(1)(e)(i) of this section is a permitted use or disclosure of protected health information, as defined in 45 C.F.R. 160.103, and an authorization or opportunity to be heard shall not be required.

{¶ l} "(iii) Division (B)(1)(e)(i) of this section does not require a mental health professional to disclose psychotherapy notes, as defined in 45 C.F.R. 164.501.

{¶ m} "(iv) An interested person who objects to testimony or disclosure under division (B)(1)(e)(i) of this section may seek a protective order pursuant to Civil Rule 26.

{¶ n} "(v) A person to whom protected health information is disclosed under division (B)(1)(e)(i) of this section shall not use or disclose the protected health information for any purpose other than the litigation or proceeding for which the information was requested and shall return the protected health information to the covered entity or destroy the protected health information, including all copies made, at the conclusion of the litigation or proceeding.

{¶ o} "(B)(2)(a) If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol, a drug of abuse, a combination of them, a controlled substance, or a metabolite of a controlled substance in the person's whole blood, blood serum or plasma, breath, or urine at any time relevant to the criminal offense in question, and that conforms to section 2317.022 of the Revised Code, the provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses. If the health care provider does not possess any of the requested records, the provider shall give the officer a written statement that indicates that the provider does not possess any of the requested records."

patient to be completely candid with his or her physician, thus enabling more complete treatment. As this court stated in *State v. Antill* (1964), 176 Ohio St. 61, 64-65, 26 O.O.2d 366, 368, 197 N.E.2d 548, 551, '* * * [t]he purpose of this privilege is to encourage patients to make a full disclosure of their symptoms and conditions to their physicians without fear that such matters will later become public. * * *' In addition, *Huzjak v. United States* (N.D.Ohio 1987), 118 F.R.D. 61, 63, explains the purpose of the physician-patient privilege:

{¶ 25} " 'Under the physician/patient privilege, a treating physician is prohibited from disclosing matters disclosed by the patient to the physician during consultations regarding treatment or diagnosis of the patient. The rationale of this privilege is to promote health by encouraging a patient to fully and freely disclose all relevant information which may assist the physician in treating the patient. *Floyd v. Copas*, 9 [O.O.3d] 298 (1977). If the patient feared that such information could be revealed by the treating doctor, the patient might refrain from, or be inhibited from, disclosing relevant information. The privilege is designed to provide an assurance of confidentiality.' " *Miller*, 44 Ohio St.3d at 139-140, 541 N.E.2d 602.

{¶ 26} Dr. Debski claims that because he has not waived the physician-patient privilege and none of the statutory exceptions apply, he cannot be compelled to testify about his personal medical information. Even though the court of appeals found that the information sought by the Wards is a "communication" under R.C. 2317.02(B)(5)(a), the court held that the physician-patient privilege did not apply because the plain language of the statute prohibits only a *physician* or a *dentist* from testifying about those communications. It is important to recognize that it is Debski's status as a patient, rather than his status as a physician, that applies here. The appellate court determined that nothing in the statute gives a *patient* the right to refuse to testify about his or her own medical information.

**{¶ 27}** Because we must strictly construe the statutory privilege, we conclude that R.C. 2317.02(B) does not protect a person from having to disclose his or her own medical information when that information is relevant to the subject matter involved in a pending civil action. The court of appeals is correct that the statute does not address whether medical information is discoverable from a patient himself. We are not permitted to read such language into the statute. See *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 26 (court cannot add exception when plain language of statute does not contain exception); *State v. Hughes* (1999), 86 Ohio St.3d 424, 427, 715 N.E.2d 540 ("In construing a statute, we may not add or delete words").

**{¶ 28}** Although Debski strenuously argues that his status as a nonparty controls the outcome of this case, the reason he was not named as a party is that the Wards do not know whether he is the one who exposed Donald Ward to hepatitis B. A potential tortfeasor cannot use his or her status as a nonparty to prevent discovery of information that could shed light on whether he or she is the actual tortfeasor.

### C. Roe and Schlotterer Are Distinguishable

**{¶ 29}** Debski responds that the court of appeals' holding is contrary to our decisions in *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, and *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237. He argues that *Roe* established that the personal medical information of nonparty patients is absolutely privileged and protected from discovery by R.C. 2317.02(B), the physician-patient privilege. But the holding in *Roe* is not as broad as Debski claims. We have never held that the physician-patient privilege provides absolute protection against the disclosure of medical information.

**{¶ 30}** In *Roe*, the plaintiffs sought to discover abuse reports and medical records of nonparties from a health-care provider. *Roe* at ¶ 14. The plaintiffs claimed that the disclosure of the medical records was necessary to protect or further a countervailing interest that outweighed the nonparty patients' interest in confidentiality. Id. at ¶ 46. No one disputed R.C. 2317.02's applicability; the *Roe* plaintiffs sought medical records *from a health-care provider*. Id. at ¶ 26. Instead, the question was whether to apply the exception to the privilege that had been created in *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518. We held that the exception should not be applied. The medical records of the nonparties in *Roe* were not subject to discovery, because (1) R.C. 2317.02(B) prohibited the health-care provider from releasing them, (2) no statutory exception to the privilege applied, and (3) the nonparty patients had not expressly given their consent to the release of their records.

**{¶ 31}** Debski also argues that in *Schlotterer*, we reaffirmed Ohio's longstanding law that the patient is the exclusive holder of the physician-patient privilege and thus the patient is a "protected source." 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237. But *Schlotterer*, too, is distinguishable because it also involved a litigant's ability to obtain discovery of a nonparty's medical records *from a physician*. Id. at ¶ 2 and 12. The case concerned whether the insureds' consent to release medical information to their insurer permitted release of the insureds' medical records to their insurer to allow it to pursue a fraud claim against a physician. The facts in *Schlotterer* fit squarely within R.C. 2317.02(B).

### D. Patients May Still Obtain a Protective Order

**{¶ 32}** Although we have determined that the physician-patient privilege does not apply in this case, this does not mean that Debski has no potential recourse. As the appellate court indicated, the trial court must still consider

whether the doctor is entitled to a protective order.[5]  The trial court granted a protective order because it believed that the physician-patient privilege applied.  Privilege, however, is not the only basis to grant a protective order.  As Civ.R. 26(C) indicates, protective orders may be granted when justice requires "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Upon remand, the trial court must weigh these factors against the Wards' right to discover the information.

### III.  Conclusion

{¶ 33} We therefore hold that under the circumstances of this case, R.C. 2317.02(B), the physician-patient privilege, does not preclude discovery of medical information from a patient.  The judgment of the Summit County Court of Appeals is affirmed.

Judgment affirmed.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

O'DONNELL, J., dissents and would reverse the judgment of the court of appeals.

_____

---

5.  {¶ a} Pursuant to Civ.R. 26(C):

{¶ b} "Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

{¶ c} "If the motion for a protective order is denied in whole or in part, the court, on terms and conditions as are just, may order that any party or person provide or permit discovery."

**PFEIFER, J., concurring.**

{¶ 34} I concur in the majority opinion. I write separately to emphasize that the failure of the tortfeasor, the hospital administrators, and their attorneys to tell the plaintiff who it was that exposed him to hepatitis is shameful. Evidence indicating what the tortfeasor and the hospital knew about the hepatitis exposure and when they knew it is critical to a final determination of liability, including potential punitive damages.

{¶ 35} I would go further than the majority opinion. Instead of stating that discovery is not precluded, I would remand with instructions that discovery begin immediately. The need for discovery in this case is so compelling that I would not countenance any more hearings.

———————————

Scanlon & Elliott, Michael J. Elliott, and Lawrence J. Scanlon, for appellees.

Roetzel & Andress, L.P.A., and Douglas G. Leak; and David M. Best, for appellant.

———————————