68

SUTTON et al., Appellees,

v.

STEVENS PAINTON CORPORATION et al., Appellants.

[Cite as *Sutton v. Stevens Painton Corp.*, 193 Ohio App.3d 68, 2011-Ohio-841.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 95143.

Decided Feb. 24, 2011.

70

Charles V. Longo Co., L.P.A., Charles V. Longo, and Matthew D. Greenwell, for appellees.

Thompson Hine, L.L.P., John R. Mitchell, and Thomas L. Feher; and Robert V. Housel Co., L.P.A., and Robert V. Housel, for appellant Thompson Hine, L.L.P.

Weston Hurd L.L.P., and John G. Farnan, for defendant Shadow Investigations, Inc.

———————

Sean C. Gallagher, Judge.

{¶ 1} Appellant Thompson Hine, L.L.P., appeals the decision of the Cuyahoga County Court of Common Pleas that ordered the production of various documents following an in camera inspection. For the reasons stated herein, we affirm in part, reverse in part, and remand.

{¶ 2} This action was filed in June 2005 by plaintiffs-appellees David and Stephanie Sutton ("plaintiffs") following a workplace accident in which David Sutton ("Sutton") fell from an aerial man-lift and was injured.[1] The complaint, as amended, alleged product-liability and negligence claims against the manufacturer and distributer of the lift, Terex Aerials, Inc., and Terex Corporation (collectively, "Terex"), an intentional-tort claim against Sutton's employer, Stevens Painton Corporation, and other claims.[2] Sutton alleged that he sustained severe and permanent injuries and was unable to hold gainful employment as a result of the accident.

{¶ 3} Thompson Hine represented Terex in the action. In an effort to obtain evidence concerning the extent of Sutton's alleged injuries, Thompson Hine engaged Shadow Investigations, Inc. ("Shadow"), a private investigative firm, to conduct surveillance of Sutton. The surveillance materials were disclosed to plaintiffs in the course of discovery. Thompson Hine asserts that "[u]pon receipt of the surveillance materials in June 2007, plaintiffs' counsel immediately threatened to file invasion of privacy claims against Terex, Shadow, and/or Thompson Hine, and from at least that point forward, Thompson Hine was anticipating litigation against it and/or Terex."

{¶ 4} Thereafter, plaintiffs amended their complaint to add Thompson Hine and Shadow as party defendants and asserted a claim of invasion of privacy against them. After plaintiffs settled their claims against the original defendants, they filed a sixth amended complaint against Thompson Hine and Shadow that

———————

1. Plaintiff-appellee Brittany Sutton was later added as a party to the action.

2. Also named as defendants to the initial claims were Alban Equipment Company, United Rentals, Simons Aerials, Inc., and John Does I–VII.

asserted claims for invasion of privacy and intentional infliction of emotional distress.[3] The action continued on these claims.

{¶ 5} Plaintiffs alleged, among other allegations, that Thompson Hine and Shadow or their agents or employees "surreptitiously videotaped Plaintiffs at their private residence," "physically entered upon Plaintiffs' private residence under false pretenses," "solicit[ed] private and confidential information," "rec-ord[ed] a conversation concerning Plaintiffs' private affairs or concerns," wrong-fully invaded "Plaintiffs' solitude, seclusion and private affairs," and caused plaintiffs "severe and debilitating emotional distress." The surveillance and investigation activities occurred from February through May 2007.

{¶ 6} During the course of discovery, plaintiffs sought documents surrounding the surveillance from Thompson Hine. Thompson Hine refused to produce certain e-mails contained in a "privilege log" and claimed that these documents were privileged or work product. Plaintiffs filed a motion to compel, along with a supplemental motion, seeking production of the e-mails. Plaintiffs argued that Thompson Hine had waived any privilege by previously disclosing certain e-mails that contained information relating to plaintiffs' claims. Plaintiffs also claimed that they were entitled to discover "the underlying facts and circumstances surrounding the investigation by Shadow Investigation orchestrated by [Thompson Hine attorneys]," including the manner in which Shadow was retained, the manner in which the investigation was conducted, and the facts and circum-stances relating to Thompson Hine's authorization of and participation in the alleged tortious conduct.

{¶ 7} The trial court ordered Thompson Hine to "produce all emails on the privilege log for in camera inspection." After conducting a thorough review of the documents, the trial court issued an order requiring some of the documents produced with redaction, some produced without redaction, and some not subject to disclosure.

{¶ 8} Thompson Hine has appealed the decision of the trial court.[4] The sole assignment of error provides as follows: "The trial court erred in ordering the production of privileged materials without providing any basis for doing so."

{¶ 9} Initially, we address the sufficiency of the trial court's order. Thompson Hine claims that the order should be reversed because it fails to provide any basis for ordering the disclosure of the documents in question. It is clear from

---

3. Also, Brittany Sutton was added as a plaintiff under the sixth amended complaint.

4. We note that generally discovery orders are not appealable. However, if the judgment orders a party to disclose allegedly privileged material, it is a "provisional remedy" under R.C. 2505.02(A)(3) and is appealable pursuant to R.C. 2505.02(B)(4).

the record that the parties were engaged in a discovery dispute over whether documents contained in Thompson Hine's "privilege log" were protected by the attorney-client privilege or work-product doctrine. The trial court conducted an in camera inspection and reviewed each individual document, as evinced by its detailing of the Bates-stamped documents in separate categories within its decision. After reviewing these documents to determine whether the asserted privileges applied, the trial court determined that some of the documents were subject to disclosure, made redactions to some of these documents, and determined that other documents were not subject to disclosure.

{¶ 10} While Thompson Hine argues that "specific determinations" should have been made by the trial court, it never requested further clarification from the trial court. Further, the court was not required by Civ.R. 52 to make findings of fact and conclusions of law concerning a decision on a discovery motion. See *Carstons v. Klatt*, Franklin App. No. 01AP–538, 2002-Ohio-2236, 2002 WL 926356, ¶ 19–20; *Sublett v. Sublett* (June 5, 1987), Wyandot App. No. 16–85–20, 1987 WL 12100. "Absent evidence to the contrary, we presume that the lower court conducted the in-camera review and determined that the material contained in the records was relevant or necessary." *Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Ohio-2750, 790 N.E.2d 817, ¶ 14.

{¶ 11} In this particular case, we find that the record, which includes the documents filed under seal, provides this court with an adequate basis to conduct a meaningful review. Therefore, we proceed to address the merits of the appeal.

{¶ 12} Civ.R. 26(B)(1) permits parties to obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The Ohio Supreme Court has stated that a discovery issue that involves the assertion of an alleged privilege is reviewed de novo. See *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13; *Roe v. Planned Parenthood S.W. Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 29. However, the Ohio Supreme Court also has expressed that the determination of whether materials are protected by the work-product doctrine and the determination of "good cause" under Civ.R. 26(B)(3), are "discretionary determinations to be made by the trial court." *State ex rel. Greater Cleveland Regional Transit Auth. v. Guzzo* (1983), 6 Ohio St.3d 270, 271, 6 OBR 335, 452 N.E.2d 1314. It is an abuse of discretion if the court's ruling is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Applying either standard of review herein, we reach the same result.[5]

---

5. As explained in *United States v. Roxworthy* (C.A.6, 2006), 457 F.3d 590, 592, fn. 1: "The discrepancy in standards of review for these two privilege issues exists because, in establishing

{¶ 13} In this case, plaintiffs argue that Thompson Hine waived any privilege by disclosing certain e-mails that were allegedly protected communications. A review of the record reflects that the previously produced e-mails did not involve communications with a client. Because these documents were not covered by the attorney-client privilege, there is no waiver of that privilege. We also do not find that the circumstances herein warrant a waiver of privilege with regard to work-product materials. See *Huntington Natl. Bank v. Dixon*, Cuyahoga App. No. 93604, 2010-Ohio-4668, 2010 WL 3814180, ¶ 24 (recognizing that "the Eighth District has not adopted such a per se waiver rule").

{¶ 14} Thompson Hine argues that plaintiffs already possess the surveillance materials and correspondence showing the facts and circumstances of the investigation by Shadow and that the trial court ordered the production of irrelevant privileged materials. Plaintiffs argue that they are entitled to discover the underlying facts and circumstances surrounding the investigation and that the asserted privileges may not be used to conceal tortious conduct and do not prohibit them from obtaining discovery relevant to their claims herein.

{¶ 15} The attorney-client privilege exempts from discovery certain communications between attorneys and their clients in the course of seeking or rendering legal advice. *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 210, 744 N.E.2d 154. "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 18. The privilege applies to pertinent communications between the attorney and client and generally can be waived only by the client. Id. at ¶ 21–22.

{¶ 16} The attorney-client privilege is founded on the premise that confidences shared in the attorney-client relationship are to remain confidential. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 660, 635 N.E.2d 331. The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584.

---

the abuse-of-discretion standard of review for work product privilege claims, we focused on the fact that privilege issues are discovery-related, and applied the deferential review typically accorded to district court decisions about the scope of discovery, * * * whereas in establishing the standard of review for attorney-client privilege claims, we focused on whether privilege was a question of law or fact, and, upon concluding it was a question of law, applied de novo review."

{¶ 17} There are a number of well-established exceptions to the attorney-client privilege. *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 24–43. The privilege is not absolute, and there is no presumption of confidentiality of all communications made between an attorney and client. *Moskovitz* at 660–661. The determination whether a communication should be afforded the cloak of privilege depends on the circumstances of each case, and the privilege must yield when justice so requires. *Lemley v. Kaiser* (1983), 6 Ohio St.3d 258, 264, 6 OBR 324, 452 N.E.2d 1304.

{¶ 18} Some of the documents ordered disclosed in this matter are communications made between Thompson Hine and its client Terex. Others are between Thompson Hine, as a defendant, and its internal counsel. These are attorney-client communications that are subject to the attorney-client privilege. Although the documents contain information relating to the surveillance and investigation activities, they were prepared after the alleged wrongful conduct had occurred.

{¶ 19} One of the recognized exceptions to the attorney-client privilege is the "crime-fraud exception," which applies to communications made in furtherance of a crime or fraud. *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 384, 700 N.E.2d 12. The crime-fraud exception does not apply when a person consults an attorney in an effort to defend against past misconduct. *United States v. Skeddle* (N.D.Ohio 1997), 989 F.Supp. 890, 904; *United States v. Zolin* (1989), 491 U.S. 554, 562–563, 109 S.Ct. 2619, 105 L.Ed.2d 469. Rather, the communication must be intended in some way to facilitate or to actively conceal a crime or fraud. *Skeddle* at 903–904; *Squire, Sanders & Dempsey, L.L.P.*, at ¶ 25–28.

{¶ 20} "A party invoking the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud. * * * The mere fact that communications may be related to a crime is insufficient to overcome the attorney-client privilege." *State ex rel. Nix* at 384.

{¶ 21} Here, plaintiffs did not make a prima facie showing that the subject attorney-client communications were made "in furtherance" of wrongful conduct. Rather, the record reflects that the surveillance and investigation activities occurred from February through May 2007. The subject communications were made after this time and after plaintiffs' counsel had expressed an intention to file an invasion-of-privacy claim. Although plaintiffs contend that Thompson Hine is concealing evidence of alleged wrongdoing, a communication is not subject to disclosure merely because it contains relevant information that may

help to prove that a crime or fraud occurred. For the crime-fraud exception to apply, there must be evidence to suggest that the communications were made with the intention of "covering up" the alleged wrongful conduct. See *Skeddle*, 989 F.Supp. at 903–904. Our review of the communications reflects that they were made for the purpose of defending against the claims, not for the purpose of actively concealing wrongful conduct. Therefore, we find that the crime-fraud exception does not apply.

{¶ 22} We also find that the "lack-of-good-faith exception" does not apply in this matter. This exception has been found to apply in matters involving "the lack of a good faith effort to settle by a party or the attorneys acting on his or her behalf" and "communications furthering an insurance company's lack of good faith in denying coverage." *Squire, Sanders & Dempsey, L.L.P.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, at ¶ 29–31, citing *Moskovitz*, 69 Ohio St.3d at 661, 635 N.E.2d 331, and *Boone*, 91 Ohio St.3d at 212, 744 N.E.2d 154. We do not find that this exception is applicable herein.

{¶ 23} Upon our review of the record, we find that plaintiffs failed to establish a sufficient basis to overcome the attorney-client privilege. Therefore, we find that the trial court erred in ordering the disclosure of documents that are protected by the attorney-client privilege.

{¶ 24} The majority of documents that were ordered disclosed are communications made with Shadow or made between Thompson Hine attorneys. These documents contain information pertaining to the engagement of Shadow, the surveillance and investigation activities, and related matters. These documents were made in the course and anticipation of litigation and constitute attorney work product.

{¶ 25} The work-product doctrine, which is set forth under Civ.R. 26(B)(3), provides a qualified privilege that protects an attorney's mental processes in the preparation of litigation. *Squire, Sanders & Dempsey, L.L.P.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 55. "The purpose of the work-product doctrine is 'to prevent an attorney from taking undue advantage of his adversary's industry or efforts.' Civ.R. 26(A)(2)." *Boone*, 91 Ohio St.3d at 210, 744 N.E.2d 154, fn. 2.

{¶ 26} The work-product doctrine encompasses materials prepared in anticipation of litigation or for trial, and allows for the discovery of work product "only upon a showing of good cause therefor." Civ.R. 26(B)(3). "[A]ttorney work product, including but not limited to mental impressions, theories, and legal conclusions, may be discovered upon a showing of good cause if it is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere." *Squire, Sanders & Dempsey, L.L.P.*, at ¶ 60.

{¶ 27} Plaintiffs' claims of invasion of privacy and intentional infliction of emotional distress against Thompson Hine are directly related to the firm's involvement in the investigation and surveillance of Sutton during the pendency of the underlying litigation. The record in this matter contains evidence showing that Thompson Hine engaged Shadow to conduct surveillance of Sutton and that Thompson Hine directed, authorized, and controlled the investigation activities. There is also evidence reflecting that extensive surveillance was conducted and that the investigators went to Sutton's property, where he resides and operates horse stables, knocked on his door, and solicited personal information under the guise of boarding horses.

{¶ 28} In seeking the production of e-mails contained in Thompson Hine's privilege log, plaintiffs referred to certain e-mails that were already produced. Those e-mails contain information relevant to Thompson Hine's involvement in the surveillance and investigation activities. Plaintiffs argued that the undisclosed e-mails in the privilege log contained discoverable information relevant to their claims. They further asserted that they are entitled to discover the underlying facts and circumstances surrounding the investigation and Thompson Hine's involvement therein.

{¶ 29} Our review reflects that the information sought to be discovered is directly at issue in the lawsuit and is necessary to establish plaintiffs' claims. Plaintiffs are seeking information concerning Thompson Hine's alleged knowledge of, and participation and acquiescence in, the conduct giving rise to plaintiffs' claims. The need for this information is compelling, and the information cannot be obtained elsewhere because these are internal documents of Thompson Hine. Accordingly, plaintiffs demonstrated good cause, and the trial court did not err in ordering the disclosure of the work-product documents.

{¶ 30} As stated by one court, "The material and information sought relates directly to plaintiff's claims for invasion of privacy and the intentional infliction of emotional distress which are based upon the conduct of the private investigators defendant hired to investigate plaintiff during the pendency of this litigation. Information concerning the investigators' activities and defendant's motivation for, knowledge of, or acquiescence to the investigators' activities is relevant to plaintiff's claims and is nowhere else obtainable than from either the investigators themselves or from defendant and his counsel. Further, although information concerning the extent of the investigator's activities may possibly be obtainable from third parties who may have observed them, it is most likely this information is only obtainable from the materials and information plaintiff seeks disclosed. This information is central to whether, in fact, the alleged torts were even committed. Without the sought after disclosure, plaintiff will most likely be

78

unable to establish his claims." *Klages v. Sperry Corp.* (July 8, 1986), E.D.Pa., Civ.A. No. 83–3295, 1986 WL 7636.

## CONCLUSION

{¶ 31} We affirm the trial court's decision requiring the disclosure of the documents that constitute work product, as redacted. We reverse the trial court's decision requiring the disclosure of communications subject to the attorney-client privilege. We find that the following Bates-stamped documents shall remain under seal and undisclosed: SUTTON: 004082.001–002, 005039.001, 004450.001–004, 001357, 004437, 004438, 000043.001–010, 006185.001–010, 001170, 001560.001–002, 001561.001–002, 004388.001–002, 007608.001–002, 001686, 004462.001–002, and 004375.001.[6]

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

CELEBREZZE JR., P.J., and SWEENEY, J., concur.

---

6. These documents have been placed in a separately sealed envelope by the court of appeals.