[Cite as *Schiff v. Dickson*, 2011-Ohio-6079.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 96539 and 96541**

# MARVIN H. SCHIFF, ESQ.

PLAINTIFF-APPELLEE

vs.

# BLAKE A. DICKSON, ESQ., ET AL.

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-701734

**BEFORE:** Jones, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** November 23, 2011

**ATTORNEYS FOR APPELLANTS**

Blake A. Dickson
Mark D. Tolles, II
The Dickson Firm, L.L.C.
Enterprise Place, Suite 420
3401 Enterprise Parkway
Beachwood, Ohio 44122


**ATTORNEYS FOR APPELLEES**

Thomas A. Barni
Renee S. Pienta
Dinn, Hochman & Potter, L.L.C.
5910 Landerbrook Drive
Suite 200
Cleveland, Ohio 44124




LARRY A. JONES, J.:

{¶ 1}  Defendants-appellants, Blake Dickson, Esq., and Dickson & Campbell, L.L.C. (collectively "Dickson"), have filed three appeals from judgments of the trial court rendered in Common Pleas Case No. CV-701734. On June 22, 2011, App. No. 96540, was dismissed. The other two appeals were consolidated for our review.

{¶ 2}  The record before us demonstrates that Blake Dickson and plaintiff-appellee Marvin Schiff are Ohio attorneys, who from 1998 through February 2005, partnered in the law firm of Schiff & Dickson, L.L.C. During the course of the partnership, Schiff and Dickson were 50/50 partners. The partnership ended on February 4, 2005, with Schiff's

departure from the firm.[1]

{¶ 3}  In dissolving the firm, the parties, each represented by counsel, entered into a "redemption agreement."   The agreement provided that the "lead attorney" (Dickson) would calculate the percentage of the total fee that was earned on the pending contingent-fee cases through February 4, 2005, and that amount would be equally shared. The agreement provided that, in calculating the percentages, the lead attorney would use "reasonable and good faith judgment" and consider the "totality of the circumstances."

{¶ 4}  The agreement also provided that if one of the parties questioned or disputed the amount of payment made, the parties would first "make reasonable efforts to resolve the dispute."   If those efforts failed, the parties would submit the dispute to non-binding mediation, and if that exercise was not fruitful, then non-binding arbitration.   If a party was not satisfied with the arbitration award, a court action could be filed.

{¶ 5}  Prior to Schiff's departure, the firm was engaged as counsel in 13 cases in which it represented various plaintiffs against ConAgra Foods, which manufactures microwave popcorn and has a plant in Marion, Ohio.

{¶ 6}  After the firm dissolved, the popcorn cases settled and Dickson paid Schiff what it believed to be full and final payment on the cases.   Schiff contends, however, that the payments were only partial and that sums are still due and owing to him on those cases.

I

[1]Dickson subsequently partnered with another attorney and the firm became Dickson & Campbell.

A. Schiff's Complaint

{¶ 7} In 2009, Schiff filed a "complaint for monetary damages" against Dickson. The complaint sought relief based on the following claims: Count 1, breach of contract (redemption agreement); Count 2, breach of contract (Weisman, Kennedy & Berris fees);[2] Count 3, unjust enrichment and quantum meruit; and Count 4, conversion. Count 5 sought a full accounting relative to the disputed cases.

B. Dickson's Answer, Counterclaims, and Motions

{¶ 8} Dickson filed an answer and counterclaims. In its answer, Dickson claimed that the complaint was barred by the following affirmative defenses: (1) time; (2) laches; (3) non-entitlement to "any amount over and above what [ ] has already been paid"; and (4) accord and satisfaction. Further, under "affirmative defenses," Dickson alleged that the complaint was "filed in direct and willful violation of Ohio Civil Rule 11. The case should be dismissed and both Plaintiff Marvin Schiff and his counsel should be sanctioned."

{¶ 9} For its counterclaims, Dickson alleged: Count 1, intentional breach of contract; Count 2, fraud; Count 3, abuse of process; Count 4, conversion; and Count 5, extortion.

{¶ 10} Dickson filed a motion for summary judgment, seeking judgment in its favor on all of Schiff's claims; the trial court denied the motion. Dickson filed a motion for reconsideration of its ruling, which the court also denied.

---

[2]This count is not relevant to this appeal.

C. Schiff's Motions

{¶ 11} Schiff filed a motion to compel discovery responses from Dickson. Schiff also filed a motion to dismiss Dickson's counterclaims, or alternatively, for summary judgment on the accord and satisfaction affirmative defense and all the counterclaims.

{¶ 12} After conducting an in camera inspection of the disputed discovery, the trial court granted Schiff's motion to compel and ordered that Dickson provide Schiff with the client files for the 13 disputed popcorn cases. Dickson appealed, but this court dismissed it for lack of a final appealable order. *Schiff v. Dickson* (Sept 1, 2010), Cuyahoga App. No. 95338, motion no. 437005.

{¶ 13} The trial court denied Schiff's motion to dismiss, and granted in part and denied in part the motion for summary judgment. Specifically, summary judgment was granted as to the fraud, abuse of process, conversion, and extortion counterclaims, granted as to the accord and satisfaction affirmative defense, but denied as to the breach of contract claim.

II

{¶ 14} Dickson challenges the trial court's rulings with the following assignments of error:

> "I. The trial court erred in refusing to apply the doctrine of accord and satisfaction, and in refusing to enforce the express terms of the redemption agreement, and therefore, improperly denied defendants' motion for summary judgment.
>
> "II. The trial court erred in granting summary judgment on defendants' counterclaims for fraud, abuse of process, conversion, and extortion, as well as defendants' affirmative defense of accord and satisfaction.

"III.   The trial court erred in ordering defendants to produce copies of complete files to plaintiff."

"A.   Lack of Jurisdiction to Consider Denial of Dickson's Summary Judgment Motion

{¶ 15} We do not have jurisdiction to consider the first assignment of error challenging the denial of Dickson's summary judgment motion.   It is well established that the denial of a summary judgment motion is not a final appealable order.   *Balson v. Dodds* (1980), 62 Ohio St.2d 287, 289, 405 N.E.2d 293; *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 90, 554 N.E.2d 1292; R.C. 2505.02.   The appeal from the judgment denying Dickson's summary judgment was dismissed by this court.   *Schiff v. Dickson* (June 22, 2011), Cuyahoga App. No. 96540, motion no. 445479.   The first assignment of error is therefore moot.

B.   Judgment Partially Granting Schiff's Summary Judgment Motion

{¶ 16} Under Civ.R. 56(C), the entry of summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   The moving party carries the burden to show that no genuine issue of fact exists, and all reasonable inferences should be construed most strongly in favor of the nonmoving party.   Civ.R. 56(C); *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 120, 413 N.E.2d 1187.   An appellate court reviews a trial court's ruling on a motion for summary judgment de novo.   *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

{¶ 17} The trial court granted Schiff's motion as it related to Dickson's

counterclaims for fraud, abuse of process, conversion, and extortion. The court also granted Schiff's motion as it related to Dickson's affirmative defense of accord and satisfaction. We will consider each in turn.

1. Fraud

{¶ 18} Civ.R. 9(B) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The elements of a fraud claim are: "(1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance." *Volbers–Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, at ¶27, citing *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 73, 491 N.E.2d 1101.

{¶ 19} In his fraud counterclaim, Dickson alleged that Schiff "made representations of fact in [his] complaint, and to his attorney, and to his prior attorney, and to others, which are false." Dickson further alleged that Schiff's complaint "constitutes fraud and has been brought in extreme bad faith."

{¶ 20} Dickson contests the facts as presented by Schiff, an occurrence in nearly all litigation. The filing of a complaint does not constitute the "transaction at hand" for a fraud claim. In other words, the fraud had to predate the filing of the complaint.

Dickson cannot demonstrate that he justifiably relied on Schiff's complaint to his detriment; indeed he did not — he filed an answer with affirmative defenses and counterclaims contesting Schiff's complaint.

{¶ 21} Further, with the exception of the last paragraph of his fraud counterclaim,[3] his claim relates to others, that is, Schiff's present and former attorneys, the court, "other attorneys," and "other third parties." Dickson did not have standing in this case to assert claims on behalf of other third parties.

{¶ 22} In light of the above, the trial court did not err in granting Schiff summary judgment on Dickson's fraud counterclaim.

2. Abuse of Process

{¶ 23} In Ohio, the elements of the tort of abuse of process are "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 626 N.E.2d 115, paragraph one of syllabus.

{¶ 24} "In an abuse of process case, '[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.' Prosser & Keeton on Torts (5 Ed.1984) 898, Section 121. Simply, abuse

---

[3]Counterclaim at ¶36.

of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club, Inc.* (1996), 75 Ohio St.3d 264, 271, 662 N.E.2d 9.

{¶ 25} Dickson's abuse of process counterclaim was based on the mere fact that Schiff had filed an action against it: "Plaintiff Marvin H. Schiff has filed the complaint in this case or caused the complaint to be filed in this case, by and through his lawyer, in an attempt to induce the Defendants to pay him additional funds to which he is not entitled"; "Plaintiff Marvin H. Schiff filed the complaint or caused the complaint to be filed in this case for improper purposes." Counterclaim, ¶41, 42.

{¶ 26} Abuse of process presumes that "a legal proceeding has been set in motion in *proper form and with probable cause*." (Emphasis added.) *Yaklevich* at id. Thus, the mere filing of a complaint cannot constitute an abuse of process. "[T]he filing of a lawsuit triggering the issuance of process by way of summons does not constitute abuse of process * * *." *Beacon Journal Publishing Co. v. Zonak, Poulos & Cain* (Sept. 25, 1979), Franklin App. No. 79AP-123.

{¶ 27} Dickson neither claimed nor presented evidence that Schiff "perverted" the proceeding "to attempt to accomplish an ulterior purpose for which it was not designed." *Yaklevich* at id. The trial court therefore did not err in granting Schiff summary judgment on Dickson's abuse of process counterclaim.

3. Extortion

{¶ 28} Dickson's extortion counterclaim alleged that the "complaint was filed in

bad faith for the sole purpose of attempting to extort money from the Defendants." Counterclaim at ¶54. Extortion is a *crime*. See R.C. 2905.11. "A party must rely on a separate civil cause of action, existent either in common law or through statute, to bring a civil claim based on a criminal act." *Groves v. Groves*, Franklin App. No. 09AP-1107, 2010-Ohio-4515, ¶25, citing *McNichols v. Rennicker*, Tuscarawas App. No. 2002 AP 04 0026, 2002-Ohio-7215, ¶17; *Edwards v. Madison Twp*. (Nov. 25, 1997), Franklin App. No. 97AP-819. In *Groves*, the Tenth Appellate District held that "no civil cause of action for extortion exists." Id. at ¶26.

{¶ 29} In light of the above, the trial court properly granted Schiff summary judgment on Dickson's extortion counterclaim.

4. Conversion

{¶ 30} The elements of conversion are "'(1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.'" *Dream Makers v. Marshek*, Cuyahoga App. No. 81249, 2002-Ohio-7069, quoting *Haul Transport of Va., Inc. v. Morgan* (June 2, 1995), Montgomery App. No. CA 14859. Conversion is "any distinct act of dominion wrongfully exerted over one's property in denial of his rights or inconsistent with it." *City Loan & Sav. Co. v. Dickison* (Dec. 2, 1916), 26 Ohio Dec. 593.

{¶ 31} In its counterclaim, Dickson alleged that it "own[s] all of the money that Plaintiff Marvin H. Schiff *is seeking* to take improperly." (Emphasis added.)

Counterclaim at ¶47. Thus, Schiff did not have "dominion" over the disputed funds. Dickson does not contend that Schiff is wrongfully exerting control over the amounts it paid him; rather, its contention is that those funds are the total amount that Schiff is entitled to. On this record, therefore, the trial court properly granted Schiff summary judgment on Dickson's conversion counterclaim.

     5.   R.C. 2323.51 Frivolous Conduct Claim

{¶ 32} In granting summary judgment to Schiff on the fraud, abuse of process, and extortion claims, the trial court noted that Dickson's contentions in those claims would be more appropriate for a claim under R.C. 2323.51. We agree.

{¶ 33} R.C. 2323.51 governs the award of attorney's fees as a sanction for frivolous conduct. "Conduct" is defined, in part, as "[t]he filing of a civil action, [or] the assertion of a claim * * * in connection with a civil action." R.C. 2323.51(A)(1)(a). "Frivolous conduct" includes that which "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation"; "is not warranted under existing law"; cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law"; "consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"; or "consists of denials or factual contentions that are

not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief." R.C. 2323.51(A)(2).

{¶ 34} The sum and substance of Dickson's fraud, abuse of process, and extortion counterclaims was that Schiff filed his action "in an attempt to compel the Defendants to pay Plaintiff additional money to which he is not entitled [causing the defendants] the time and expense of defending the within baseless complaint." Counterclaim at ¶54. Such an allegation is the very type that would lend itself to a claim under R.C. 2323.51.

6. Accord and Satisfaction Affirmative Defense

{¶ 35} Dickson also claims that the trial court erred in granting summary judgment in favor of Schiff on his accord and satisfaction affirmative defense. We find consideration of that portion of the trial court's judgment premature, even with the trial court's "no just cause for delay" language.

{¶ 36} The appellate jurisdiction of this court is limited to review of final orders or judgments of trial courts from which a timely notice of appeal is filed. Section 3, Article IV, Ohio Constitution. If the order or judgment appealed from is not a final order, this court lacks jurisdiction to review it. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 20, 540 N.E.2d 266.

{¶ 37} A final order is a order: "that affects a substantial right in an action that in effect determines the action and prevents a judgment"; "that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment"; "that vacates or sets aside a judgment or grants a new trial"; "that grants or denies a

provisional remedy * * *"; "that determines that an action may or may not be maintained as a class action"; "determining the constitutionality of any changes to the Revised Code made by Am. Sub. S.B. 281 of the 124th general assembly * * * or any changes made by Sub. S.B. 80 of the 125th general assembly * * *"; "in an appropriation proceeding that may be appealed pursuant to division (B)(3) of section 163.09 of the Revised Code." R.C. 2505.02(B).

{¶ 38} The only category that the portion of the trial court's judgment granting summary judgment in favor of Schiff on Dickson's accord and satisfaction defense could be placed would be as "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment." But, the order does not prevent a judgment and, therefore, is not final.

{¶ 39} In light of the above, the trial court did not err in granting Schiff's partial motion for summary judgment and the second assignment of error is overruled.

C. Judgment Granting Schiff's Motion to Compel

{¶ 40} The trial court granted Schiff's motion to compel and ordered Dickson to provide Schiff with the client files for the disputed popcorn cases. Dickson contends that the court's order is "irrelevant because the case can be resolved by the accord and satisfaction doctrine." It further contends that the trial court's order violated: (1) the redemption agreement; (2) the work-product doctrine; and (3) attorney-client privilege.

{¶ 41} Generally, the trial court is vested with broad discretion when it comes to matters of discovery, and the "standard of review for a trial court's discretion in a

discovery matter is whether the court abused its discretion." *Mauzy v. Kelly Servs., Inc.* (1996), 75 Ohio St.3d 578, 592, 664 N.E.2d 1272. However, a discovery dispute that involves the assertion of an alleged privilege is reviewed de novo. *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶13.

### 1. Accord and Satisfaction

{¶ 42} Dickson first states that "[i]f this Court finds that the doctrine of accord and satisfaction applies to this case, then none of the requests for production * * * are relevant * * *." For the reasons already discussed, we do not consider Dickson's accord and satisfaction affirmative defense. Accordingly, we will not address Dickson's contention that the discovery order was "irrelevant" because the case is resolved under the doctrine of accord and satisfaction.

### 2. The Redemption Agreement

{¶ 43} Dickson next contends that the redemption agreement denies Schiff access to client files. Dickson cites to language in the agreement that it had the right to retain the case files. Dickson also contends that Schiff could have negotiated for access to the files, but did not, and as such, "[t]his Court must not unilaterally rewrite the contract between the parties." We are not persuaded by either argument. Retaining files and having access to them are distinct concepts. Moreover, there is no provision in the agreement stating that Schiff may not obtain access to file information for the purpose of resolving fee disputes.

{¶ 44} Under Civ.R. 26(B)(1), a party may request of another party information that

either is "relevant to the subject matter involved in the pending action" or "appears reasonably calculated to lead to the discovery of admissible evidence." The files were "relevant to the subject matter involved in the pending action" and, therefore, the trial court did not abuse its discretion in ordering their production.

3. Work-Product Privilege

{¶ 45} We are also not persuaded by Dickson's argument that the trial court's order violated Dickson's work-product privilege. "Work product consists of 'documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative' and may be discovered only upon a showing of good cause. This rule is often referred to as the 'work-product doctrine.' The purpose of the work-product doctrine is '*to prevent an attorney from taking undue advantage of his adversary's industry or efforts.*'" (Emphasis added.) *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 2001-Ohio-27, 744 N.E.2d 154, fn. 2, quoting Civ.R. 26; see, also, *Sutton v. Stevens Painton Corp.*, 193 Ohio App.3d 68, 2011-Ohio-841, 951 N.E.2d 91, ¶25.

{¶ 46} The underlying actions at issue in this case were concluded when Schiff made his discovery request. Schiff's request for documents did not include Dickson's mental impressions or work for *this case*. Rather, it sought evidence, which was in the sole possession of Dickson, of the work done in the popcorn cases, the fees for which Schiff was partially entitled to. Thus, it is clear that Schiff was not seeking the information to take advantage of Dickson's industry or efforts. Under these facts, the work-product doctrine was not implicated in this case.

4.    Attorney-Client Privilege

**{¶ 47}** In regard to Dickson's claim of the attorney-client privilege, Dickson contended that because of the privilege it had no obligation to produce any portion of the client files.    The attorney-client privilege exempts from discovery certain communications between attorneys and their clients in the course of seeking or rendering legal advice.    *Boone* at id.    The privilege is founded on the premise that confidences shared in the attorney-client relationship are to remain confidential. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 660, 635 N.E.2d 331.

**{¶ 48}** The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."    *Upjohn v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584.    But the privilege is not absolute, and there is no presumption of confidentiality of all communications made between an attorney and client.    *Moskovitz* at 660–661. The determination whether a communication should be afforded the cloak of the   privilege depends on the circumstances of each case, and the privilege must yield when justice so requires.    *Lemley v. Kaiser* (1983), 6 Ohio St.3d 258, 264, 452 N.E.2d 1304.

**{¶ 49}** The client files at issue here encompassed several general categories of documents.    First, there were medical records of the plaintiffs, but Schiff withdrew his request for those documents.    Next were documents created prior to February 4, 2005. As the trial court found, and we agree, privilege does not apply to those documents

because Schiff was an attorney for the clients until February 4, 2005.

**{¶ 50}** The third category of documents was ConAgra's personnel files for each plaintiff. We again agree with the trial court that the files were "not subject to the attorney-client privilege since they are not confidential communications to counsel; in fact, they appear to have been produced to opposing counsel in the personal injury case." Trial court's order, p. 5.

**{¶ 51}** Another category of documents were the plaintiffs' confidentiality agreements. But the agreements allow disclosure if ordered by "a court of competent jurisdiction." Moreover, the releases provided that the plaintiffs "and their attorneys" shall not disclose "the total amount of the settlement." Dickson previously disclosed the settlement amounts to Schiff; he cannot now try to claim that the agreements are not discoverable because of that provision.

**{¶ 52}** The final category of documents were "miscellaneous" documents, including authorizations to release medical records, invoices for copying records, and letters from Dickson's office requesting providers for records. The documents were not attorney-client communications.

**{¶ 53}** In light of the above, the trial court did not err in granting Schiff's motion to compel and the third assignment of error is overruled.

III.

**{¶ 54}** In conclusion, the first assignment of error, relative to the denial of Dickson's summary judgment motion, is overruled as moot.

{¶ 55} Upon review of the second assignment of error, relative to the trial court's judgment granting summary judgment in favor of Schiff on Dickson's fraud, abuse of process, conversion, and extortion counterclaims, the trial court did not err. As already discussed, the allegations in those claims would lend themselves to a frivolous conduct claim under R.C. 2323.51. The portion of the trial court's judgment relative to the accord and satisfaction affirmative defense is premature and we have not addressed it.

{¶ 56} Finally, the trial court neither abused its discretion nor erred in granting Schiff's motion to compel.

{¶ 57} Judgments affirmed consistent with this opinion; remanded for further proceedings.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, JUDGE

MARY J. BOYLE, P.J., and
KENNETH A. ROCCO, J., CONCUR