[Cite as *Sherwin-Williams Co. v. Motley Rice, L.L.C.*, 2013-Ohio-3737.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99591**

# THE SHERWIN-WILLIAMS COMPANY

PLAINTIFF-APPELLEE

vs.

# MOTLEY RICE, L.L.C., ET AL.

DEFENDANTS-APPELLANTS

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No.   CV-689237

**BEFORE:**   Keough, J., Stewart, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   August 29, 2013

**ATTORNEYS FOR APPELLANT**

Robert G. Cohen
Luis M. Alcalde
Robert G. Schuler
Kegler, Brown, Hill & Ritter Co.
65 East State Street
Suite 1800
Columbus, Ohio 43215

Michael J. O'Shea
Lipson O'Shea Legal Group
Beachcliff Market Square
19300 Detroit Road, Suite 202
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

James R. Wooley
Gregory V. Jolivette, Jr.
Michael S. Quinlan
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114

Brendan Delay
24500 Center Ridge Road, Suite 175
Westlake, Ohio 44145

KATHLEEN ANN KEOUGH, J.:

**{¶1}** Defendant-appellant, Motley Rice L.L.C. ("Motley Rice"), appeals an interlocutory order granting plaintiff-appellee, The Sherwin-Williams Company's ("Sherwin-Williams"), motion to compel and ordering Motley Rice to produce various documents and communications to Sherwin Williams.[1]  For the reasons that follow, we affirm.

**{¶2}** In a prior appeal from Motley Rice, *Sherwin-Williams v. Motley Rice*, 8th Dist. Cuyahoga No. 96927, 2012-Ohio-809 (*"Motley Rice I"*), this court set forth the relevant facts and procedures.

> In 1999, the state of Rhode Island, represented by Motley Rice, sued several paint manufacturers, including Sherwin-Williams, alleging that they created a public nuisance by selling lead-based paints that poisoned thousands of children in the state.  Rhode Island sought to have the lead-paint manufacturers remediate lead paint wherever it was found.  In February 2006, a jury found that three paint manufacturers, including Sherwin-Williams, created a public nuisance by making lead-based paints that did in fact poison thousands of children in the state.
>
> But in 2008, the Rhode Island Supreme Court reversed the jury's verdict, concluding that the action should have been dismissed at the outset.  After the Supreme Court's ruling, Sherwin-Williams moved the Rhode Island lower court to recover its costs.
>
> Relevant to this appeal, Motley Rice opposed Sherwin-Williams' motion for costs, attaching to it a single-page document (this exhibit was referred to as "Exhibit 16" in the Rhode Island case) containing three PowerPoint

---

[1]Defendant, Stephen Walker is not a party to this appeal.

slides regarding information about Sherwin-Williams' defense costs in lead-paint litigation and possible insurance coverage available to the company. Sherwin-Williams immediately sought to have the document sealed, contending that it was confidential and protected by the attorney-client privilege. Sherwin-Williams further demanded discovery regarding Motley Rice's receipt of the document. The Rhode Island court ultimately ruled that the document was not protected by the attorney-client privilege because it found that the Sherwin-Williams' attorney who created Exhibit 16 "was imparting factual and business information, rather than serving as a lawyer when he prepared * * * the slides depicted on Exhibit 16." As such, the court did not permit Sherwin-Williams to discover Motley Rice's receipt of the document. The Rhode Island court further determined that the remaining 33 pages of the fax contained innocuous information and was not privileged.

In April 2009, Sherwin-Williams filed the present action in the Cuyahoga County Court of Common Pleas against Motley Rice and Stephen Walker (a former Sherwin-Williams' employee who contacted Motley Rice concerning the lead-paint litigation in Rhode Island), asserting claims of conversion, replevin, aiding and abetting tortious conduct, misappropriation of trade secrets, and civil conspiracy. Sherwin-Williams brought an additional claim against Motley Rice for tortious interference with business relations between Sherwin-Williams and Walker. And it asserted additional claims against Walker for breach of contract and fraudulent inducement (for falsely representing that he had never disclosed confidential information in connection with a 2007 settlement of an employment law claim).

In its complaint, Sherwin-Williams alleged that [w]ithout the knowledge or consent of Sherwin-Williams, Motley Rice has obtained stolen copies of eighty PowerPoint slides and other confidential material used by Sherwin-Williams' General Counsel, Associate General Counsels for Litigation and Complex Litigation, and Vice President for Corporate Communications and Public Affairs to advise the Company's Board of Directors.

Sherwin-Williams further alleged that the PowerPoint slides contained privileged attorney-client communications and attorney work product, that Motley Rice refused to reveal how it obtained the documents, and that it refused to return the documents to Sherwin-Williams.

With respect to Steven Walker, Sherwin-Williams alleged that he worked for Sherwin-Williams from 1995 to 2005. As part of his employment,

Walker assisted Sherwin-Williams' officers, attorneys, and executives with technical and design aspects related to presentations presented to the board of directors, and therefore had access to confidential PowerPoint presentations. Sherwin-Williams alleged that during the lead-paint litigation, Walker met with a Motley Rice attorney and provided her with Sherwin-Williams' confidential, proprietary, and privileged information.

Motley Rice filed a counterclaim against Sherwin-Williams, alleging that Sherwin-Williams "perverted these proceedings in an attempt to accomplish an ulterior purpose." Motley Rice claims that Sherwin-Williams continues to press this litigation, despite the fact that (a) the documents at issue are not protected by attorney-client privilege or work-product doctrine and are not proprietary, confidential, or trade secrets; (b) Sherwin-Williams already tried unsuccessfully to obtain a legal remedy from the Rhode Island court relating to the same 34 pages of documents at issue in this case; (c) the copies of the 34 pages of documents that Motley Rice had have been sealed with this court; and (d) there is no credible claim that Sherwin-Williams has been damaged in any way. Motley Rice contends that Sherwin-Williams' "real purpose" is, among other things, to retaliate against Motley Rice for instituting lead-paint litigation against Sherwin-Williams and to force Motley Rice to expend legal fees and related costs to defend this litigation.

The single-page document used by Motley Rice in its opposition brief to Sherwin-Williams' motion for costs in Rhode Island — Exhibit 16 — was page 9 of the 34-page fax Motley Rice received in September 2006 — while the case was pending appeal to the Rhode Island Supreme Court. Thirteen days after Sherwin-Williams filed this case in Cuyahoga County, Motley Rice agreed to deposit under seal the entire 34-page fax and all copies (which it did on April 16, 2009).

In July 2009, Sherwin-Williams re-served its first request for production of documents on Motley Rice. Motley Rice objected to the following requests for production:

> (1) all documents "showing, memorializing, describing, or relating to the circumstances regarding how Motley Rice or the State came into possession, custody, and control of Sherwin-Williams' documents";

> (2) "all communications and records of communications concerning the acquisition, retention, possession or use by Motley Rice" of Sherwin-Williams' documents;

(3) "[a]ll records concerning the dissemination, distribution, disclosure, transfer, or sharing by Motley Rice" of Sherwin-Williams' documents;

(4) "[a]ll documents showing the names and addresses of every person or entity that has transferred, disclosed, shown, given, or communicated Sherwin-Williams' documents to any person or entity other than Sherwin-Williams";

(5) "[a]ll documents showing the name and address of every person employed by Motley Rice or the State who has received, obtained, possessed, or seen Sherwin-Williams' documents";

(6) "[a]ll records concerning meetings, telephone calls, email, or other communications by Motley Rice or the State with any former or current employee, director, officer, attorney, representative, or agent of Sherwin-Williams concerning in whole or in part Sherwin-Williams' documents"; and

(7) "[a]ll records showing, memorializing, describing, or relating to the reasons for Motley Rice's decision not to * * * inform Sherwin-Williams before September 28, 2008 of its receipt and possession of Sherwin-Williams' documents[.]"

Despite the fact that Motley Rice deposited the 34-page fax under seal in April 2009, Sherwin-Williams alleged (in its first amended complaint filed in October 2009) that Motley Rice still refused to "explain how it came into possession of Sherwin-Williams' Documents and the Fax," or "identify and return all of Sherwin-Williams' Documents."

In May 2010, the trial court ordered Motley Rice to make [attorneys] Fidelma Fitzpatrick and Aileen Sprague available for deposition at a mutually convenient time to answer questions regarding what interactions and/or communications they have had with Stephen Walker, and their knowledge of Motley Rice's receipt or use of the 34 page facsimile that was previously filed under seal with this Court.

In June 2010, Sherwin-Williams deposed Fidelma Fitzpatrick and Aileen Sprague, attorneys for Motley Rice who were part of the lead-paint litigation team. Fitzpatrick is a partner and Sprague is an associate at Motley Rice; Fitzpatrick is Sprague's supervisor. Fitzpatrick explained that Stephen Walker contacted her by telephone in late August or early September 2006. She said that Walker initially left her a voicemail message, stating that he was a former Sherwin-Williams' employee and that he wanted to talk to her because he had information about "illegal conduct by Sherwin-Williams" relating to the lead-paint litigation in Rhode Island. Walker and Fitzpatrick talked for the first time

on September 6, 2006. Walker told her that while employed at Sherwin-Williams, he had been asked to "doctor" certain "historical Sherwin-Williams' documents, to redact or edit out references or pictures of lead or lead paint from those particular documents." Walker also told Fitzpatrick that Sherwin-Williams had "purged certain offices and locations of documents that were relevant to the Rhode Island lawsuit and had shifted those documents to either warehouses or other divisions within the company[.]" Walker told her that he could provide her with evidence to back up his claims of Sherwin-Williams' illegal conduct. The phone call lasted 20 minutes.

Fitzpatrick further testified that on September 12, 2006, she and Laura Holcomb, a paralegal for Motley Rice, received the 34-page fax anonymously from a FedEx Kinkos in Ohio. Fitzpatrick said that she assumed Walker sent the fax. After reviewing the fax, Fitzpatrick determined that the documents did not support Walker's claims and "were of little import or little relevance to whatever we were doing at the time." She put them aside because they "were of no value to us." Fitzpatrick said the fax was filed and stored somewhere at Motley Rice, but she is not the one who filed it, nor did she know where it was stored. She did, however, write an email to Jack McConnell, a partner at Motley Rice, about the fax, and probably Holcomb as well. She also said that the email still exists, but refused to produce it or testify to its contents on the advice of counsel.

Fitzpatrick further testified to two short phone calls with Walker on September 14, 2006. She stated that the purpose of these calls were probably to set up a date and time for them to meet in Ohio. Jack McConnell knew about the meeting beforehand, and possibly Aileen Sprague and Neil Kelly at the Rhode Island attorney general's office. Fitzpatrick would not, however, testify as to any content of the discussions she had with McConnell, Sprague, or Kelly.

Fitzpatrick and Holcomb met Walker at the Cleveland airport on September 20, 2006, for approximately one hour. Walker further explained to them how Sherwin-Williams hid documents in the Rhode Island litigation. Fitzpatrick told Walker that she needed proof of his allegations. She said that when she left the meeting with Walker, she fully expected him to send her evidence of his claims against Sherwin-Williams. But Fitzpatrick stated that she never received anything. At this point, Fitzpatrick decided not to do anything about Walker's allegations without any evidence to back them up. Plus, she said at this point, Rhode Island had won the trial and the case was pending appeal. Fitzpatrick said that Walker did not demand anything from her or Motley Rice, nor did Motley Rice offer Walker anything in return for information.

Fitzpatrick further testified that other people reviewed the 34-page fax besides her and Holcomb, including Jack McConnell and possibly Neil Kelly at the Rhode Island attorney general's office. These people were also involved in discussions about the fax, and maybe Bob McConnell as well, another partner at Motley Rice who was part of the

lead-paint litigation team.

Fitzpatrick explained that she did not hear from Walker again until the summer of 2007. She said that Walker told her that he was involved in settlement talks with Sherwin-Williams regarding an employment action he had filed against the company after he was terminated, and he called to tell her that as part of that agreement, he could no longer talk to her or anyone at Motley Rice.

Fitzpatrick said that Walker did not call her again until October 2008 (this was right after Motley Rice had filed its opposition brief, which had Exhibit 16 attached to it). Walker called in an agitated state, saying that Sherwin-Williams or Jones Day "had men sent to his door who claimed to be FBI agents and attempted to intimidate him and harass him about this Exhibit 16." Fitzpatrick was not in the office at the time, so Sprague talked to Walker. Sprague testified that she just tried to calm Walker down and told him not to answer his door if they returned.

The last time Fitzpatrick heard from Walker was January 2009. He called to tell her that he was being deposed about the meeting he had with Fitzpatrick and about the 34-page fax. Walker told her that he did not send the fax to her, and he would testify to that fact.

Fitzpatrick further testified that she was the attorney who drafted the opposition brief to Sherwin-Williams' motion to recover its costs in the Rhode Island court in September 2008. In response to Sherwin-Williams' question as to who remembered the 34-page fax when preparing the brief two year [sic] later, Fitzpatrick testified that she could not recall. Nor could Fitzpatrick recall who made the decision to use page nine of the 34 pages. Instead, she said the use of it was a team effort between Motley Rice attorneys and attorneys at the Rhode Island attorney general's office.

Sprague testified to the events as Fitzpatrick had, but to a much lesser extent as she was not involved with Walker or the 34-page fax as much as Fitzpatrick was. Sprague did not even know about the 34-page fax until October 2008 when she talked to Walker (who was in an agitated state) because Fitzpatrick was out of the office.

In July 2010, Sherwin-Williams filed a motion to compel Motley Rice's responses to written discovery and deposition questions. Sherwin-Williams asserted that Motley Rice violated the trial court's order of May 2010, ordering Motley Rice to produce deponents to testify to its receipt and use of the 34-page fax. In the court's May 2010 order, the trial court had ordered Motley Rice to make Fidelma Fitzpatrick and Aileen Sprague available for deposition at a mutually convenient time to answer questions regarding what interactions and/or communications they have had with Stephen Walker, and their knowledge of Motley Rice's receipt or use of the 34 page facsimile that was previously filed under seal with this Court.

The trial court granted Sherwin-Williams' motion to compel. First, the trial court determined that the information requested was not protected by the attorney-client privilege because it was not communications between the attorney (Motley Rice) and the client (the state of Rhode Island); it was internal communications between Motley Rice attorneys or communications between Motley Rice attorneys and its co-counsel on the case, the Rhode Island attorney general's office. The trial court then determined that the information requested was protected by the work-product doctrine, but held that Sherwin-Williams demonstrated "good cause" for disclosure of Motley Rice's claimed work product because it was relevant to Motley Rice's alleged tortious conduct and was in Motley Rice's control and otherwise unavailable. The trial court explained that "Motley Rice is not simply a law firm trying to prevent an opposing attorney from rooting through its case file, but an alleged tortfeasor that Sherwin-Williams claims should be held to account in civil damages for its conduct."

Regarding testimony, the trial court ordered Motley Rice witnesses to answer all deposition questions as to how they came to possess or know any part of the 34-page packet, where they kept it, where they took it, with whom they discussed it, and the substance of such discussion. With respect to documents, the trial court ordered that Motley Rice must produce for an in camera inspection all documents listed on its privilege log that contain communications between Motley Rice and its client, the state of Rhode Island. The trial court explicitly held that ruling did not apply to communications with the Rhode Island attorney general's office because those communications were not communications between an attorney and a client and were not protected by the attorney-client privilege.

The trial court further ordered that "other documents that are responsive to the discovery requests, including Motley Rice's intra-office communications about the documents at issue and communications with co-counsel Rhode Island's attorney general" are to be "produced to the plaintiff without an in camera inspection, since they are not communications between a client and an attorney."

*Id*. at ¶ 7-32.

{**¶3**} In *Motley Rice I*, this court affirmed the trial court's decision that Motley Rice's internal communications were not protected by attorney-client privilege. *Id*. at ¶ 59. However, this court found

that the trial court erred by ordering the production of claimed work-product material without first conducting an in camera inspection of the materials for which Motley Rice asserted the protection. *Id*. This court remanded the case with instructions. *Id*. at ¶ 58.

{**¶4**} Pursuant to the remand order and instructions from this court, the trial court conducted an in camera review of those documents and communications that Motley Rice asserted were protected. After conducting the in camera inspection, the trial court issued a written opinion granting Sherwin-Williams' motion to compel and ordering Motley Rice to produce to Sherwin- Williams (1) a complete copy of Fitzpatrick and Sprague's written answers to the deposition questions that were attached to the court's copy of its notice of submission of written responses to questions posed by Sherwin-Williams for in camera, filed September 19, 2012; and (2) documentary evidence showing the provenance, use, and value to Motley Rice of Sherwin-William's confidential information — to wit, nine exhibits.

{**¶5**} It is from this order that Motley Rice appeals, arguing two assignments of error, which will be addressed together.

{**¶6**} In its first assignment of error, Motley Rice argues that the trial court erred in holding that the documents it ordered Motley Rice to produce do not contain opinion work product. In its second assignment of error, Motley Rice contends that the court abused its discretion by holding that the plaintiff had demonstrated "good cause" to require the production of Motley Rice's opinion work product in the form of internal communications regarding meetings and communications with a potential witness, and

regarding documents and strategy in pending litigation.

**{¶7}** Federal case law has identified and distinguished two categories of work product: ordinary fact work product and opinion work product. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. However, this distinction is a result of the Federal Rules of Civil Procedure expressly protecting from disclosure attorney opinion work product. *See* Fed.R.Civ.P. 26(b)(3)(A) and (B).

**{¶8}** However, Ohio work product is governed by Civ.R. 26(B)(3), which provides in relevant part: "a party may obtain discovery or documents and tangible things prepared in anticipation of litigation or for trial by or for another party or that party's representative * * * only upon a showing of good cause therefor * * *."

**{¶9}** "[A] showing of good cause under Civ.R. 26(B)(3) requires demonstration of need for the materials — i.e., a showing that the materials, or information they contain, are relevant and otherwise unavailable." *Squire, Sanders & Dempsey v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 57 quoting *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 16.

**{¶10}** The Ohio Supreme Court has addressed the standard of disclosure of work product. "Attorney work product, *including but not limited to mental impressions, theories, and legal conclusions*, may be discovered upon a showing of good cause if it is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere." (Emphasis added.) *Squire, Sanders & Dempsey* at paragraph two of the syllabus.

**{¶11}** Therefore, unlike the federal rule and case law, it appears that Ohio has made no distinction regarding work product and opinion work product — "attorney work

product" may be discoverable upon a showing of good cause, (1) that it is directly at issue in the case, (2) there is a compelling need for the information, and (3) the evidence cannot be obtained elsewhere. Therefore, whether work product is classified as "opinion" or "factual" is of no consequence for our analysis in this case. Accordingly, our review of this case is for an abuse of discretion.

{¶12} The Ohio Supreme Court has explained that "the determination of whether materials are protected by the work-product doctrine and the determination of 'good cause' under Civ.R. 26(B)(3), are 'discretionary determinations to be made by the trial court.'" *Sutton v. Stevens Painton Corp.*, 192 Ohio App.3d 68, 2011-Ohio-841, 951 N.E.2d 91, ¶12 (8th Dist.), quoting *State ex rel. Greater Cleveland Regional Transit Auth. v. Guzzo*, 6 Ohio St.3d 270, 271, 452 N.E.2d 1314 (1983). Discretionary decisions are reviewed under an abuse of discretion standard of review. *Id*. It is an abuse of discretion if the court's ruling is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶13} Our review of the documents that were ordered discoverable reveal that they are internal communications involving Motley Rice employees regarding the Sherwin-Williams document received by facsimile and the purported sender of that document.

{¶14} The trial court ruled that these documents are work product, yet discoverable. These internal communication were established during the course of on-going litigation with Sherwin-Williams. Whether all of the documents were created

in anticipation of litigation was not raised with the trial court or on appeal. Accordingly, assuming without deciding that these documents were prepared in anticipation of litigation, we find no abuse of discretion by the trial court.[2]

{¶15} Our review of the documents and record reflect that Sherwin-Williams has shown good cause that the documents are discoverable. The information sought to be discovered is directly at issue to Sherwin-Williams' claims against Motley Rice in the underlying lawsuit and is necessary to establish Sherwin-Williams' claims. Sherwin-Williams identified in its motion to compel that its purpose in requesting the documents and information was to discover how Motley Rice acquired, kept, used, and disseminated Sherwin-Williams' confidential and privileged property.

{¶16} Exhibits 1, 3, 8, 20, and 44, as identified by the trial court and corresponding Bates-stamped numbers, provide insight and relevant information on how Motley Rice acquired the Sherwin-Williams' document, how it was kept and disseminated, and how it was possibly going to be used. Moreover, the need for the information is compelling because these exhibits establish a time line of the acquisition of the document and when it was received and sent by various individuals within the Motley Rice law firm. Finally, the information cannot be obtained elsewhere because these are internal documents of Motley Rice and the documents fill in the gaps in the factual time line that were

---

[2]If any of these documents were not prepared in anticipation of litigation or trial, then they are not work product, and thus, are discoverable. It is the burden of the party claiming protection to prove that the protected documents were prepared in anticipation of litigation or trial. *See generally Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Ohio-3358, 790 N.E.2d 817, ¶ 12, 23, 27 (8th Dist.).

"unknown" or could not be "recalled" by individuals at deposition.

{¶17} As for Exhibits 16, 17, 64, and 66, we do not find that these documents are work product. These documents, while internal communications, contain attachments that do not reveal any strategies, mental impressions, theories, or legal conclusions between the recipients. Civ.R. 26(B)(1) permits parties to obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Therefore, while we find these documents are not work product, we do find they are relevant to the subject matter involved in the pending action due to the nature of the attachments; these documents are discoverable by Sherwin-Williams.

{¶18} Accordingly, we do not find the trial court's decision ordering the production of the nine exhibits identified by exhibit and Bates-stamped numbers, to Sherwin-Williams to be arbitrary, unreasonable, or unconscionable. The assignments of error are overruled.

{¶19} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, A.J., and
TIM McCORMACK, J., CONCUR