[Cite as *Nationwide Agribusiness Ins. Co. v. Heidler*, 2016-Ohio-455.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, et al., | : | CASE NO. CA2015-07-013 |
| | : | |
| Plaintiffs-Appellants, | : | O P I N I O N |
| | : | 2/8/2016 |
| - vs - | : | |
| | : | |
| JONATHAN W. HEIDLER, et al., | : | |
| | : | |
| Defendants-Appellees | : | |

CIVIL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CVH 20140532

Subashi & Wildermuth, Nicholas E. Subashi, Tabitha Justice, The Greene Town Center, Suite 230, 50 Chestnut Street, Dayton, Ohio 45440, for plaintiffs-appellants, Nationwide Agribusiness Insurance Co. and Nationwide Mutual Fire Insurance Co.

Lane Alton Horst, LLC, Thomas J. Keener, Michael J. Kelley, Two Miranova Pl., Suite 220, Columbus, Ohio 43215, for defendant-appellee, Jonathan W. Heidler

Michael N. Schaeffer, Scott N. Schaeffer, 88 West Mound Street, Columbus, Ohio 43215, for defendant-appellee, Wilmington Savings Bank

**RINGLAND, J.**

{¶ 1} Plaintiffs-appellants, Nationwide Agribusiness Insurance Company and Nationwide Mutual Fire Insurance Company, appeal from a decision of the Clinton County Court of Common Pleas granting a motion to compel discovery in a declaratory judgment

action regarding an insurance coverage dispute. For the reasons stated below, we affirm in part and reverse in part the decision of the trial court.

{¶ 2} On May 6, 2014, the home and vehicle of defendant-appellee, Johnathan W. Heidler, were completely destroyed in a fire. Heidler insured the home and the vehicle through a homeowner's policy and an automobile policy issued by Nationwide. The home and real property were mortgaged to defendant-appellee, Wilmington Savings Bank. Heidler's estimated losses due to the fire amounted to approximately $1,250,000. Heidler and Wilmington Savings claimed coverage for the loss under the insurance policy issued by Nationwide.

{¶ 3} After receiving notice of the fire, Nationwide retained Tom Bensen, a Certified Fire Investigator, to determine the cause and origin of the fire. Bensen conducted a comprehensive inspection of the scene the day after the fire. After examining the scene, Bensen informed Nationwide employees that he believed the fire to be a result of arson. Subsequently, on May 11, 2014, Nationwide assigned a Special Investigations Unit investigator to the claim. Bensen filed a fire analysis report regarding the fire loss dated July 8, 2014. In that report, Bensen opined that the fire originated in multiple places throughout the structure, the fire pattern was irregular, and the pattern was consistent with being started from an ignitable liquid. The report concluded: "The cause of the fire is INCENDIARY in nature and the direct result of an intentional human act." Bensen filed a second report dated February 18, 2015 and came to the same conclusion.

{¶ 4} On November 12, 2014, Nationwide filed a declaratory judgment action against Heidler and Wilmington Savings. Heidler counterclaimed for breach of contract and bad faith denial of coverage. During discovery of the contractual claim, Heidler submitted to Nationwide a set of interrogatories, requests to admit, and requests to produce certain documents. Nationwide refused to answer some of the interrogatories and withheld

production of the underwriting file, the claim file created and maintained as part of the fire loss investigation, and a copy of the insurance agent file created by Pittser Insurance Agency. Thereafter, Heidler filed a motion to compel.

{¶ 5} The trial court granted Heidler's motion to compel in part. Specifically, the court ordered Nationwide to produce all the documents created or obtained before October 16, 2014 in the underwriting file, the claim file, and the insurance agent file. The court reasoned that after October 16, 2014, the documents were protected by the work product doctrine because litigation became imminent against Heidler. The court also ordered Nationwide to answer several of the interrogatories that required it to state its knowledge of evidence or evidence in its possession that supports its policy defenses and affirmative defenses to Heidler's counterclaims.

{¶ 6} Nationwide now appeals, asserting two assignments of error for review.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN ORDERING APPELLANTS TO PRODUCE CLAIM FILES AND OTHER INVESTIGATION DOCUMENTS PROTECTED BY THE WORK PRODUCT DOCTRINE.

{¶ 9} Nationwide challenges the trial court's order requiring it to produce the documents created before October 16, 2014. Nationwide argues the work-product doctrine protects from disclosure all the documents it generated after May 11, 2014, as this was the date Nationwide's Special Investigations Unit was assigned to the claim and litigation was anticipated.

{¶ 10} Our review of the trial court's discovery order involves both legal and factual questions. We will conduct a de novo review of the legal questions and "independently review[] the record without giving deference to the trial court's decision." *Roberts v. Mike's Trucking, Ltd.*, 12th Dist. Madison Nos. CA2013-04-011 and CA2013-04-014, 2014-Ohio-

- 3 -

766, ¶ 24. However, we will review factual questions, such as the trial court's determination regarding whether specific materials are protected by the work-product doctrine and the determination of good cause pursuant to Civ.R. 26(B)(3) under an abuse of discretion standard. *State ex rel. Greater Cleveland Regional Transit Auth. V. Guzzo*, 6 Ohio St.3d 270, 271 (1983); *Sherwin-Williams Co. v. Rice*, 8th Dist. Cuyahoga No. 96927, 2012-Ohio-809, ¶ 34. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette Nos. CA2015-01-001 and CA2015-01-002, 2015-Ohio-4452, ¶ 10.

{¶ 11} The work-product doctrine protects from discovery "documents and tangible things prepared in anticipation of litigation." *Baker v. Meijer Stores Ltd. P'ship*, 12th Dist. Warren No. CA2008-11-136, 2009-Ohio-4681, ¶ 13, quoting Civ.R. 26(B)(3). The party claiming that documents or statements are work product has the burden of showing that the materials should not be discoverable. *Peyko v. Frederick*, 25 Ohio St.3d 164, 166 (1986). A party seeking discovery of documents protected by work product must demonstrate good cause. Civ.R. 26(B)(3).

{¶ 12} To fall under the work-product doctrine, the documents sought to be discovered must have been "prepared in anticipation of litigation" and not merely in the ordinary course of business. *Stegman v. Nickels*, 6th Dist. Erie No. E-05-069, 2006-Ohio-4918, ¶ 15. In cases involving policy coverage disputes, material held by an insurance company can contain a range of information some of which was prepared in anticipation of litigation and some of which was prepared in the ordinary course of business while the insurance company was evaluating the claim. As explained by the Sixth District, "an insurance company has a routine duty to investigate accidents and, thus, such materials generated are not prepared in anticipation of litigation but prepared in the ordinary course of business." *Roggelin v. Auto-*

- 4 -

*Owners Ins. Co.*, 6th Dist. Lucas No. L-02-1038, 2002-Ohio-7310, ¶ 15.

{¶ **13**} Therefore, "in determining whether the materials are prepared in the ordinary course of business or are work product prepared in anticipation of litigation, the facts of each case must be carefully reviewed because 'at a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation.'" *Roggelin* at ¶ 16, quoting *Tayler v. Travelers Ins. Co.*, 183 F.R.D. 67, 71 (N.D.N.Y.1998). *See DeMarco v. Allstate Ins. Co.*, 8th Dist. Cuyahoga No. 100192, 2014-Ohio-933, ¶ 22-23. There is no bright line test between these two types of activity. *Roggelin* at ¶ 19, quoting *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 127 (D.Colo.).

{¶ **14**} In its discovery order, the trial court reasoned that the documents Nationwide created or obtained before October 16, 2014 were not protected by the work-product privilege. In so holding, the court rejected earlier dates proposed by Nationwide reasoning that it failed to set forth evidence showing the "type of litigation [that] might ensue or the possible parties that might be involved in the future litigation." The court went on to state that although "there may have been an early likelihood that some sort of litigation may later occur * * * it is not clear * * * when that likelihood became an imminent likelihood focused on Heidler." Therefore, the court relied on a October 15, 2014 document between two Nationwide employees investigating the claim, showing this was the first time the employees became aware Nationwide would file a declaratory judgment action against Heidler.

{¶ **15**} We find that the trial court did not err in its legal analysis regarding when documents are prepared in anticipation of litigation for purposes of the work-product doctrine. Determining when the protections of work product apply necessarily involves looking at all the facts and circumstances of the case to determine the moment the insurance company's activities shift from the ordinary course of claims evaluation to preparing for litigation. Therefore, in determining when Nationwide began to prepare for litigation, the trial court did

not err in considering when Nationwide decided the type of litigation and when that litigation became imminent. *See Perfection Corp. v. Traveler's Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Ohio-2750, ¶ 27-28 (8th Dist.); *Roggelin* at ¶ 19.

{¶ 16} However, upon a thorough review of the record, we find that the trial court abused its discretion in determining that October 16, 2014 was the date on which Nationwide's activities shifted from the ordinary course of business to anticipating litigation. Instead, due to the nature of the property loss, the subsequent arson investigation, and the suspicious circumstances surrounding the claim, we find that Nationwide began preparing for litigation on July 8, 2014, the day after it received Bensen's fire analysis report. In support of its position, Nationwide filed two affidavits of its employees averring Bensen believed the loss was a result of arson on May 7, 2014, they learned this information from Bensen, and the claim was transferred to Special Investigations Unit on May 9, 2012. These employees stated that due to the facts of the case and the suspicions of arson, they believed litigation over the claim was likely.[1] Despite these affidavits, Bensen's report concluding that the fire was arson was not given to Nationwide until July 7, 2014. In Bensen's 49-page report, he explained his investigation of the scene and concluded that due to the burn patterns and other evidence found in the home, the cause of the fire was incendiary and directly caused by an intentional human act.

{¶ 17} This court believes that at this point in Nationwide's evaluation of the claim, the likelihood that litigation would ensue was substantial. The trial court's finding that Nationwide did not begin preparing for litigation until October 16, 2014 when two of its employees became aware that Nationwide was preparing to file a declarative judgment action

---

1. The affidavits do not provide a date in which the employees believed litigation became likely. David Heller averred he was assigned the case on May 12, 2014 and believed litigation became likely soon after. Jennifer Sailor only averred litigation over the claim "was likely."

undervalues Bensen's report and the other suspicious circumstances surrounding the loss. Consequently, the work-product doctrine protects all documents created or obtained by Nationwide on or after July 8, 2014.

{¶ 18} Nationwide's first assignment of error is sustained.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED IN ORDERING APPELLANTS TO ANSWER INTERROGATORIES THAT SEEK ATTORNEY OPINION, MENTAL IMPRESSIONS, AND LEGAL STRAGETY.

{¶ 21} Nationwide also challenges the trial court's order directing it to answer interrogatories requiring Nationwide to state its knowledge of evidence or evidence in its possession that supports its specific policy defenses and affirmative defenses to Heilder's counterclaims. Nationwide maintains that answering these interrogatories would divulge attorney work product.

{¶ 22} Parties have a right to liberal discovery of information under the Rules of Civil Procedure. *Ward v. Summa Health Sys.*, 128 Ohio St. 3d 212, 2010-Ohio-6275, ¶ 9. "The purpose of the liberal discovery policy contemplated by the Ohio Rules of Civil Procedure is the narrowing and sharpening of the issues to be litigated." *State ex rel. Daggett v. Gessaman*, 34 Ohio St. 2d 55, 56-57, (1973). To this end, Civ.R. 33(B), which was patterned after Fed.R.Civ.P. 33(B), provides that "an interrogatory otherwise proper is not objectionable merely because the answer to the interrogatory involves an opinion, contention, or legal conclusion * * *." *Id.* These interrogatories are known as "contention interrogatories," and are generally a perfectly permissible form of discovery, to which a response ordinarily would be required. *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418 (6th Cir.1998), fn. 2. Contention interrogatories may seek information regarding facts or the application of the law to the facts pursuant to Civ.R. 33(B) and are generally not prohibited by the work-product doctrine. *In re*

*Continental Capital Inv. Servs., Inc.*, Bankr.N.D. Ohio No. ADV 03-3370, 2009 WL 1661918, *6 (Mar. 6, 2009); *see Graff v. Haverhill North Coke Co.*, S.D. Ohio No. 1:09-cv-670, 2012 WL 5495514, *51 (Nov. 13, 2012).

{¶ 23} In the present case, the trial court ordered Nationwide to answer interrogatories regarding its defenses. Specifically, the trial court ordered Nationwide to answer the interrogatories regarding Nationwide's insurance policy defenses:

> Interrogatories No. 11, No. 12, and No. 13 regarding knowledge of evidence or evidence in their possession that supports their very specific policy defense of arson * * * (No. 11 involves specific evidence implicating Jon Heidler or Terri Heidler, No. 12 involves specific evidence of arson. No 13 involves specific evidence of arson implicating Ron Howard.)
>
> * * * Interrogatory No. 14 regarding knowledge of evidence or evidence in their possession that supports their very specific policy defenses of concealment, misrepresentation, or fraud * * *
>
> * * * Interrogatory 15 regarding knowledge of evidence or evidence in their possession that Heidler did notify the Pittser Insurance Agency of the discontinuation of the operation of the alarm or protective system at the Heidler residence. * * *

The trial court also ordered Nationwide to answer the interrogatories regarding affirmative defenses:

> Interrogatory No. 24, regarding knowledge of evidence or evidence in their possession that supports plaintiffs' affirmative defenses * * * (regarding facts concerning Heidler's acts, errors, omissions, misrepresentations, and/or concealment of facts.)
>
> * * * Interrogatory No. 25, regarding knowledge of evidence or evidence in their possession that supports plaintiff's affirmative defenses * * * (regarding facts that would support the doctrine of laches, waiver, estoppel, and/or unclean hands).
>
> * * * Interrogatory No. 26, regarding knowledge of evidence or evidence in their possession that supports plaintiff's affirmative defenses * * * (regarding facts that would support findings of Heidler's failure to comply with all necessary terms, obligations, and preconditions found within the insurance policies at issue,

including failure to properly prepare and submit appropriate
sworn statements in proof of loss).

Lastly, the trial court ordered Nationwide to answer Interrogatory 28, "regarding knowledge of evidence or evidence in their possession that supports any other policy defenses of which plaintiffs are aware, beyond those specifically referenced in the plaintiff's Complaint * * * and/or the Answer * * *."

{¶ 24} We find that the trial court did not abuse its discretion in ordering Nationwide to answer the interrogatories. The interrogatories request Nationwide to identify the evidence upon which it will base its defenses, affirmative defenses, or defenses that Nationwide is aware of but has not yet pled. Parties are entitled to inquire to the factual basis of a legal claim by means of an interrogatory. Nationwide put this information at issue or is planning to put this information at issue by asserting the defenses in its complaint and answer to Heidler's counterclaim and now cannot withhold evidence regarding these issues. *See* Civ.R. 26(B)(3). Moreover, interrogatories are not objectionable simply because they seek information that might contain an opinion, contention, or legal conclusion. *See In re Continental* at *5-6; *Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc.*, 134 Ohio App.3d 673, 680-681 (8th Dist.1999); *In re Dayco Corp. Derivative Secs. Litigation*, S.D. Ohio Nos. C-3-82-184, C-3-82-254, C-3-82-329, and C-3-82-405 (Oct. 21, 1983). Further, the trial court crafted the discovery order to protect Nationwide's legitimate claims of work-product and attorney-client privilege by stating that it is not required to reveal explicit impressions, opinions, or legal theories. Under these circumstances, we do not find the trial court abused its discretion.

{¶ 25} Nationwide's second assignment of error is overruled.

{¶ 26} We hereby reverse the trial court's judgment requiring Nationwide to produce documents created before October 16, 2014, and find that the work-product doctrine protects

all documents created or obtained by Nationwide on or after July 8, 2014.  In all other respects, the trial court's judgment is affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.