[Cite as *In re Special Grand Jury Investigation*, 2019-Ohio-4014.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In re: Special Grand Jury Investigation   :
of Medicaid Fraud and Nursing Homes,

   :

         No. 18AP-730
        Appellants.   :     (C.P.C. No. 16CM-41)

   :    (ACCELERATED CALENDAR)

---

D E C I S I O N

Rendered on September 30, 2019

---

**On brief:** *Webster & Associates, Co., LPA, Geoffrey E. Webster*, and *Conrad Dillon*, for appellants. **Argued:** *Geoffrey E. Webster.*

**On brief:** *Dave Yost*, Attorney General, and *Anthony J. Molnar*, for appellee State of Ohio.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} This appeal arises from grand jury proceedings before the Franklin County Court of Common Pleas. Appellants, a rehabilitation and nursing center ("Rehabilitation Center") and its parent organization,[1] appeal from an order of the common pleas court compelling production of certain documents subpoenaed by appellee, State of Ohio, and rejecting appellants' claim the documents are protected from discovery by the work-product doctrine. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} The controversy giving rise to this appeal began when the Ohio Attorney General's Medicaid Fraud Control Unit issued subpoenas duces tecum to appellants

---

[1] The documents in this case are filed under seal, and we accordingly refrain from identifying appellants by name. *In re Grand Jury Proceeding of Doe*, 150 Ohio St.3d 398, 2016-Ohio-8001, ¶ 2, fn. 2.

requesting production of the complete internal investigative documentation relating to the investigation of an alleged incident of abuse of a resident that was the subject of a self-reported incident ("SRI") appellants submitted to the Ohio Department of Health on September 15, 2014.   Appellants declined to produce their internal investigation documents, asserting those materials were protected by the work-product doctrine. The Appellants produced a privilege log listing the documents withheld from production. The privilege log indicated the withheld documents consisted of: (1) "General Incident Investigation Cover Sheet & General Investigation of Incident," (2) "Incident/Accident Report," (3) written statements from 12 individuals, and (4) Rehabilitation Center administrator's notes.

{¶ 3}   Appellee moved for an order directing appellants to appear and show cause why they should not be held in contempt for failure to comply with the subpoenas duces tecum.  Appellants filed a memorandum in opposition, asserting the withheld documents were protected from discovery under the work-product doctrine and that appellee failed to establish good cause to compel production of the documents.  The trial court conducted a hearing on the motion to show cause on April 26, 2017.

{¶ 4}   On May 12, 2017, the trial court issued an entry holding the withheld documents were not protected by the work-product doctrine and ordering appellants to produce the documents to appellee under penalty of contempt.  Appellants appealed to this court, which sua sponte raised the issue of jurisdiction and dismissed for lack of a final appealable order.  *In re Special Grand Jury Investigation*, 10th Dist. No. 17AP-446, 2018-Ohio-760.

{¶ 5}   On remand following this court's decision in *Grand Jury*, the trial court scheduled a show cause hearing for August 27, 2018 to determine whether appellants should be held in contempt for failure to comply with the subpoenas.  Following the hearing, on August 31, 2018, the court issued an entry ordering appellants to produce appellee with copies of the 12 witness statements identified on the privilege log and provide the remaining documents to the court for in camera inspection.  As identified on appellants' privilege log, the remaining withheld documents consisted of the "General Incident Investigation Cover Sheet & General Investigation of Incident," the "Incident/Accident Report," and the Rehabilitation Center administrator's notes. On August 31, 2018,

appellants filed a notice of compliance indicating they had provided the 12 witness statements to appellee and the other documents to the court for in camera review. After conducting an in camera inspection of the remaining withheld documents, on September 21, 2018, the trial court ordered that all documents on the privilege log be produced to appellee.[2]

## II. Assignments of Error

{¶ 6}   Appellants appeal[3] and assign the following two assignments of error for our review:

> I. THE TRIAL COURT ERRED IN FINDING APPELLANTS' COUNSEL'S INTERNAL INVESTIGATION WAS NOT PROTECTED, PRIVILEGED WORK PRODUCT.
>
> II. THE TRIAL COURT ERRED BY FINDING THE STATE WAS ENTITLED TO SECURE APPELLANTS' COUNSEL'S DOCUMENTS THROUGH SUBPOENA.

Appellants' two assignments of error both assert the trial court erred by ordering them to produce documents they claim to be protected from discovery by the work-product doctrine; therefore, we will consider appellants' assignments of error together.

## III. Analysis

{¶ 7}   The work-product doctrine was initially recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). The *Hickman* decision held that attorney-client privilege did not protect from discovery information secured by an attorney from a witness while acting in anticipation of litigation; likewise, the attorney-client privilege did not protect memoranda and other writings prepared by counsel for her own use in prosecuting a client's case. *Hickman* at 508. However, the court recognized the

---

[2] Although the trial court's September 21, 2018 order required that all documents listed on the privilege log be produced to appellee, appellants had previously given the court notice of production of the 12 witness statements to appellee. Thus, it appears appellants are only contesting the trial court's order to the extent it ordered production of the three remaining documents that were provided to the court for in camera inspection.

[3] During the pendency of this appeal, appellee moved to dismiss for lack of a final appealable order. This court denied that motion, holding that to the extent the trial court erred in ordering disclosure, appellants would be deprived of a remedy on appeal after final judgment. *In re Special Grand Jury Investigation of Medicaid Fraud & Nursing Homes*, 10th Dist. No. 18AP-730, 2019-Ohio-2532, ¶ 25.

need to protect an attorney's case preparation materials from discovery by opposing counsel:

> Proper preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways -- aptly though roughly termed * * * as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore involate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 511. The work-product doctrine addresses the concerns with overbroad discovery of case preparation materials expressed in *Hickman*, providing a qualified privilege that affords a zone of privacy in which an attorney can analyze and prepare her client's case. *Squire, Sanders & Dempsey, LLP v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, ¶ 55. The work-product doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

{¶ 8} The work-product doctrine in civil cases in Ohio is set forth in Civ.R. 26(B)(3):

> Subject to the provisions of [Civ.R. 26(B)(5)], a party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor.

"Thus, attorney work product, including but not limited to mental impressions, theories, and legal conclusions, may be discovered upon a showing of good cause if it is directly at

issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere." *Squire, Sanders & Dempsey* at ¶ 60.

{¶ 9} In its May 12, 2017 decision, the trial court concluded the documents designated on appellants' privilege log were not protected by the work-product doctrine because they were not prepared in anticipation of litigation. The court concluded the witness statements and other materials were compiled to respond to the alleged abuse incident and prepare the SRI filing. Because preparation of the SRI was required by law, the trial court reasoned the documents were prepared in the ordinary course of business, rather than in anticipation of litigation. On remand following *Grand Jury*, appellants produced the 12 witness statements to appellee and the trial court conducted an in camera inspection of the remaining withheld documents. The court subsequently ordered appellants to produce the remaining withheld documents to appellee. The entry ordering production of the documents did not set forth the trial court's reasoning for ordering production; presumably, the in camera inspection affirmed the trial court's prior conclusion that the remaining withheld documents were not protected as attorney work product.

{¶ 10} The Supreme Court of Ohio has held that determination of whether the work-product doctrine applies and whether good cause exists to overcome the protection of the work-product doctrine are discretionary decisions of the trial court. *State ex rel. Greater Cleveland Regional Transit Auth. v. Guzzo*, 6 Ohio St.3d 270, 271 (1983) ("The existence of a Civ.R. 26(B)(1) 'privilege' as well as Civ.R. 26(B)(3) 'good cause' are discretionary determinations to be made by the trial court."). *See also Zimpfer v. Roach*, 3d Dist. No. 17-16-03, 2016-Ohio-5176, ¶ 21, citing *Guzzo*; *Galati v. Pettorini*, 8th Dist. No. 101712, 2015-Ohio-1305, ¶ 23, citing *Guzzo*. Therefore, we review the trial court's decision for abuse of discretion. An abuse of discretion occurs when a court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11} The three remaining withheld documents were described on appellants' privilege log as: (1) General Incident Investigation Cover Sheet & General Investigation of Incident, (2) Incident/Accident Report, and (3) Rehabilitation Center administrator's notes. The general investigation documents and incident/accident report appear to have been prepared by the nightshift supervisor who was on duty when the alleged incident

occurred; the other document consists of notes compiled by the administrator of the Rehabilitation Center. The work-product doctrine extends to materials prepared by agents of an attorney, in addition to those prepared by an attorney himself. *Nobles* at 238-39 ("One of [the realities of litigation in our adversary system] is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."); *In re Election of November 6, 1990 for the Office of Atty. Gen. of Ohio*, 57 Ohio St.3d 614, 615 (1991) (holding that notes prepared by agents of attorney at attorney's direction were subject to work-product doctrine protection). Appellants' counsel, Geoffrey E. Webster, testified at the April 26, 2017 show cause hearing that he directed the Rehabilitation Center administrator gather written statements from potential witnesses or individuals related to the situation and undertake an evaluation of the allegations. Therefore, we will consider whether the documents at issue are within the scope of the work product protection.

{¶ 12} The party seeking protection under the work-product doctrine bears the burden of establishing that the doctrine applies. *Sherwin-Williams Co. v. Motley Rice, LLC*, 8th Dist. No. 99591, 2013-Ohio-3737, ¶ 14, fn. 2 ("It is the burden of the party claiming protection to prove that the protected documents were prepared in anticipation of litigation or trial."). *See also Owens v. ACS Hotels, LLC*, 9th Dist. No. 27787, 2016-Ohio-5506, ¶ 9 (holding that party seeking protection under the work-product doctrine bears the burden of demonstrating that the doctrine applies); *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. No. CA2015-07-013, 2016-Ohio-455, ¶ 11 ("The party claiming that documents or statements are work product has the burden of showing that the materials should not be discoverable."). Where the work-product doctrine is found to apply, the party seeking discovery of materials covered by that protection then bears the burden of establishing good cause to overcome the protection. Civ.R. 26(B)(3).

{¶ 13} The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether a document was created in anticipation of litigation for the purpose of the work-product doctrine under the federal rules:

> We therefore embrace the test used by a number of the district courts in our circuit, including the district court in this case,

which asks (1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable.

*United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir.2006). Several Ohio courts have adopted a standard consistent with *Roxworthy*, finding it to be the prevalent position among federal circuit courts. *See Komorowski v. John P. Hildebrand Co., LPA*, 8th Dist. No. 101500, 2015-Ohio-1295, ¶ 23-24; *Estate of Hohler v. Hohler*, 185 Ohio App.3d 420, 2009-Ohio-7013, ¶ 49-50 (7th Dist.). As the Seventh District Court of Appeals stated, " '[t]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.' " *Hohler* at ¶ 48, quoting Wright & Miller, 8 *Federal Practice and Procedure*, Section 2024, at 198 (1970). Thus, the central question in this appeal is whether the trial court abused its discretion in concluding the remaining withheld documents were not protected as work product because they were not prepared in anticipation of litigation.

{¶ 14} The underlying incident leading to the filing of the SRI was an allegation by one staff member of the Rehabilitation Center that she witnessed another staff member strike a resident. Under state and federal law, appellants are required to investigate and report allegations of abuse, neglect, exploitation, or mistreatment. *See* 42 C.F.R. 483.12(c); R.C. 3721.22. Appellants are also required to "[h]ave evidence that all alleged violations are thoroughly investigated." 42 C.F.R. 483.12(c)(2). Appellants are prohibited from refusing to permit the director of the Ohio Department of Health to review its records, including materials gathered during the course of an investigation of abuse, neglect, exploitation, or mistreatment. Ohio Adm.Code 3701-64-02(C)(3). At the April 26, 2017 show cause hearing, a special agent from the Attorney General's Healthcare Fraud Section testified that in his experience it was typical for a nursing home to ask witnesses to an alleged abuse incident to prepare written statements. He further testified he had participated in two prior investigations involving the Rehabilitation Center where he was provided with copies of internal investigation materials, including witness statements.

{¶ 15} The incident of alleged abuse occurred on the evening of September 14, 2014. Attorney Webster testified at the April 26, 2017 show cause hearing that he spoke with the

administrator of the Rehabilitation Center the morning after the alleged abuse incident, prior to completion and filing of the SRI. Webster discussed the matter with the administrator and they concluded an SRI should be filed. Webster further testified he asked the administrator to perform an initial evaluation of the event and to gather written statements from anyone connected to the situation. Webster testified that beyond the filing of the SRI, he wanted information about the incident to assess other legal issues, including potential liability or malpractice insurance claims, regulatory oversight or penalties, or workers' compensation or employment consequences. Webster stated the employee who reported the alleged abuse had a history of non-compliance with personnel policies and the resident who was allegedly abused had a history of being vocal and aggressive, and that these details also prompted concerns about potential legal issues beyond the filing of the SRI. Appellants argue that Webster's testimony establishes that the remaining withheld documents were prepared in anticipation of litigation and, therefore, constitute protected work product.

{¶ 16} Based on our review of the remaining withheld documents, we conclude the trial court did not abuse its discretion by finding the documents were not protected from discovery under the work-product doctrine. The General Incident Investigation Cover Sheet & General Investigation of Incident documents and the Incident/Accident Report appear to have been completed by the nightshift supervisor at the Rehabilitation Center on the date of the alleged incident, which was *prior to* Webster's conversation with the Rehabilitation Center administrator directing her to gather additional information. These documents identify the resident who was allegedly abused, the staff member making the allegation, the staff member who allegedly committed the abuse, a brief description of the abuse allegation, and a chart documenting the "skilled nurses notes" regarding the condition of the patient (although no patient is identified in this part of the document). These documents appear to be standardized forms completed by the supervisor and/or skilled nurse. Thus, based on the timing, title, and contents of these documents, they appear to have been prepared in the normal course of business in response to the alleged abuse incident. The administrator's notes appear to consist of notes taken while reviewing a video recording at or around the time of the alleged abuse, based on the detailed times included in those notes, as well as notes of interviews with the staff member who made the

abuse allegation and the staff member who was alleged to have committed the abuse. All of the administrator's notes involve details of the events immediately before, during, and after the alleged abuse incident. As with the other withheld documents, the administrator's notes appear to be focused on the details of the alleged abuse, which was the subject of the SRI, rather than the broader legal concerns cited in Webster's testimony.

{¶ 17} Appellants argue the trial court's decision is contrary to the United States Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), where the court held the work-product doctrine applied to notes and memoranda prepared by a corporation's attorney while conducting interviews with corporate officers and employees as part of an internal investigation of potential misconduct. In *Upjohn*, a corporation discovered that one of its subsidiaries made payments to foreign government officials to secure government business. The corporation then conducted an internal investigation of payments to foreign government officials, led by its general counsel. *Upjohn* at 386-87. As part of the investigation, questionnaires were sent to managers within the company. The general counsel and outside counsel also conducted interviews with recipients of the questionnaire and other officers or employees of the corporation. *Id.* at 387. The company voluntarily reported certain questionable payments to the Securities and Exchange Commission and the Internal Revenue Service. The Internal Revenue Service immediately began an investigation of the payments and subpoenaed all files relative to the internal investigation conducted by the general counsel, including the written questionnaires sent to managers and memoranda or notes of interviews conducted by general counsel and outside counsel. *Id.* at 387-88. The corporation declined to produce the requested documents, citing attorney-client privilege and work product protection.

{¶ 18} Much of the Supreme Court's decision in *Upjohn* addressed the attorney-client privilege, which is not relevant to the present appeal. However, the court also addressed the work-product doctrine in analyzing whether the attorneys' notes of interviews with corporate officers and employees were subject to discovery. The court noted that special protection is given to work product revealing an attorney's mental processes. *Id.* at 400. The court concluded the appellate court applied the wrong standard in evaluating the work-product doctrine, and remanded for further consideration of the work product issue, providing the following guidance to the appellate court:

> The notes and memoranda sought by the Government here, however, are work product based on oral statements. If they reveal communications, they are, in this case, protected by the attorney-client privilege. To the extent they do not reveal communications, they reveal the attorneys' mental processes in evaluating the communications. As Rule 26 and *Hickman* make clear, such work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship.

*Id.* at 402.

{¶ 19} The present appeal is distinguishable from *Upjohn*, and the work-product doctrine does not apply in the same manner to appellants' remaining withheld documents in this case. As explained above, appellants were under a legal obligation to investigate and report the allegation of abuse. Appellants are legally required to allow the director of the Ohio Department of Health to access the records of their internal investigations; thus, they were on notice that such materials might be accessed by a government agency. Moreover, the contents of the remaining withheld documents relate directly to the alleged incident abuse and do not involve the broader legal issues Webster cited in discussing his anticipation of litigation. In *Upjohn*, the corporation's general counsel described his interview notes as containing "what I considered to be the important questions, the substance of the responses to them, my beliefs as to the importance of these, my beliefs as to how they related to the inquiry, my thoughts as to how they related to other questions. In some instances they might even suggest other questions that I would have to ask or things that I needed to find elsewhere." *Upjohn* at 400, fn. 8. By contrast, in the present case, the remaining withheld documents appear to contain a basic review of the alleged abuse incident and documentary evidence and witness statements regarding the events surrounding that incident. This is the type of information that would have been necessary for preparation of the SRI filed by appellants.

{¶ 20} Under these circumstances, considering the factual situation of this particular case and the contents of the documents claimed to be protected from discovery, we conclude the trial court did not abuse its discretion by holding that the remaining withheld documents were not prepared in anticipation of litigation and, therefore, did not constitute protected work product. Having affirmed the trial court's conclusion regarding

the work-product doctrine, we need not reach the question of whether appellee made a sufficient showing of good cause to overcome the protection of the work-product doctrine.

{¶ 21} Accordingly, we overrule appellants' two assignments of error.

**IV. Conclusion**

{¶ 22} For the foregoing reasons, we overrule appellants' two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and BEATTY BLUNT, JJ., concur.

_____